# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| DORRENE SOKN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.   10-cv-1122 |
| | ) | |
| FIELDCREST COMMUNITY UNIT | ) | |
| SCHOOL DISTRICT NO. 8, an Illinois | ) | |
| Local Governmental Entity, RANDY | ) | |
| VINCENT, Superintendent, in his | ) | |
| individual and official capacities, JOE | ) | |
| KIRKPATRICK, President of the Board of) | | |
| Education, in his individual capacity, | ) | |
| THOMAS BARTH, Vice President of the | ) | |
| Board of Education, in his individual | ) | |
| capacity, TAMMI COONS, Secretary of | ) | |
| the Board of Education, in her individual | ) | |
| capacity, SCOTT HILLENBURG, | ) | |
| Member of the Board of Education, in his | ) | |
| individual capacity, GREG | ) | |
| KROESCHEN, Member of the Board of | ) | |
| Education, in his individual capacity, | ) | |
| HEIDI COOK, Former Member of the | ) | |
| Board of Education, in her individual | ) | |
| capacity, TIM MCNAMARA, Member of | ) | |
| the Board of Education, in his individual | ) | |
| capacity, DANIELLE REICHMAN, | ) | |
| Member of the Board of Education, in her | ) | |
| individual capacity, and LINDA | ) | |
| REIGNER, Former Member of the Board | ) | |
| of Education, in her individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

# O R D E R   &   O P I N I O N

This matter is before the Court on 1) Plaintiff's Motion for Default and

Sanctions (Doc. 97) related to Defendant's purported destruction and withholding

of evidence and deposition misconduct and 2) Magistrate Judge Gorman's Order and Report and Recommendation ("R&R") (Doc. 112) recommending that such motion be denied.[1]  Plaintiff filed timely objections to the R&R contending that the R&R misapplied law and facts on the issue of sanctions for destruction and withholding of evidence and ignored Plaintiff's motion as to defense counsel's behavior in depositions. (Doc. 113). For the reasons stated below, the disposition recommended in the R&R is accepted in part and modified in part and Plaintiff's Motion (Doc. 97) is denied in part and granted in part.

## LEGAL STANDARDS

The motions for default judgment and sanctions at issue in the R&R are treated as pretrial dispositive motions. *Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856, 868 (7th Cir. 1996); *Alpern v. Lieb*, 38 F.3d 933 (7th Cir. 1994).  As Plaintiff filed an Objection to the R&R, the Court reviews *de novo* those portions of the R&R to which "specific written objections" have been stated. Fed. R. Civ. P. 72(b). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

---

[1] The R&R also encompassed several ancillary motions including Plaintiff's Second Motion for Leave to Amend Complaint (Doc. 96), Plaintiff's Motion to Compel and for Sanctions (Doc. 106) related to Defendant's alleged failure to respond to interrogatories, Plaintiffs' Motion for Extension of Time to Complete Discovery (Doc. 107) and three motions to file reply briefs (Docs. 99, 105 and 111), all filed by Plaintiff.  Plaintiff did not object to the R&R as to any of these motions.  Therefore the R&R is accepted without modification as to these motions.

## BACKGROUND[2]

Plaintiff was employed by Defendant Fieldcrest Community Unit School District No. 6 ("Fieldcrest") as the Principal at Fieldcrest Elementary School South ("Fieldcrest South") from July 1, 2007 to June 30, 2010. Fieldcrest is a local governmental entity, and was acting under color of state law at all times material to this suit. Each of the individual Defendants were acting in the scope of their employment and under color of state law.

Fieldcrest employed men as principals at its three other schools. Plaintiff was also the only female administrator at Fieldcrest, as, in addition to the other principals, both the dean of students and superintendent of schools were men. Plaintiff taught classes for the first two of the years and provided intervention for special education students as needed in the third year in addition to her duties as Principal at Fieldcrest South during the same time frame. None of the male principals had any teaching duties.

Plaintiff was paid less over the three-year period at issue than were two of the male principals, Principals Demay and Lapp and she received smaller percentage increases each year than the third male principal, Principal Roberts. Plaintiff also was not offered a health benefits package that the male principals received. Plaintiff alleges that these disparities were due to her sex.

In January of 2009, then-Superintendent Randy Vincent told Plaintiff that she should start looking for another job, because of teacher complaints. Plaintiff

---

[2] Although this matter is not before the Court on a Rule 12 motion, these background facts are nonetheless taken in large part from Plaintiff's Fifth Amended Complaint. (Doc. 114).

alleges that the "teacher complaints" explanation was a pretext to terminate her, both because of her sex and in retaliation for a complaint of sex discrimination. Plaintiff states that this explanation is merely pretextual because there were pre-existing problems with the teachers at Fieldcrest South and because teacher conflict had actually declined while she had been principal.

On July 6, 2009, after Plaintiff was informed on that date by Superintendent Vincent that she would receive only a 1% pay increase, she sent an email to him asking why she was receiving this level of increase, and what the other principals were earning. Superintendent Vincent replied, explaining that the other principals received increases around 4%, and that her smaller increase was due to the issues they had previously discussed. On March 24, 2010 Plaintiff sent a certified letter to each of the individual Defendants in which she alleged she was the victim of disparate treatment on the basis of her gender.  Defendants admit that such letter was sent and received by them. On March 30, 2010, the school board, including each of the Defendant members, voted against renewing Plaintiff's contract. On April 30, 2010, Plaintiff filed her first Complaint against Defendants. (Doc. 1).

At all times relevant, the Defendants had a policy known as School Board Meeting Procedure, Board Policy 2:220 (the "Policy"), which requires that closed-session school board meetings are to be audio recorded. The Policy seems to be designed to fulfill the requirements of the Illinois Open Meetings Act, 5 ILCS 120/1 *et*. *seq*. (the "OMA").  The Policy also requires that the audio recordings of closed-session school board meetings not be destroyed until no less than eighteen months have passed since the recorded meeting and after a vote by the school board

approving the destruction.  Between May 1, 2007 and January 1, 2009, the Fieldcrest school board held an unknown number of closed-session meetings, for which audio recordings were made.  During these closed-session school board meetings, it appears that matters material and relevant to Plaintiff's causes of action against the Defendants were discussed.  The audio recordings of these closed-session school board meetings have been destroyed without a vote by the school board approving the destruction.  Plaintiff contends that the audio recordings of these closed-session school board meetings were destroyed at a time when the instant suit was either on file, reasonably foreseeable, or when a reasonable person would have foreseen that the audio recordings were material to a potential civil suit.[3] The audio recordings of these closed-session meetings may have also been destroyed less than eighteen months after their recording.

Aside from the destruction of evidence, Defendants have produced to Plaintiff two audio recordings long after they were initially requested through proper discovery requests.  The Plaintiff originally requested the information in July of 2012.  She did not receive the first audio recording until June 26, 2013 and even then it was after the originally-scheduled deposition of Superintendent Vincent.  The second audio recording was received by Plaintiff on July 15, 2013.  Compounding the problem is that many of the Defendants' depositions had already proceeded and concluded.  Moreover, one of the recordings is barely audible.

---

[3] The Court cannot take this allegation as true for adjudicating this motion for sanctions after reviewing all the parties' vast submissions and the R&R. As discussed later in this Order and Opinion, the Court must make an evidentiary finding for the imposition of sanctions, not merely proceed on assumed facts. If the instant were a motion to dismiss or a similar Rule 12 motion, the Court would take these allegations as true.

On November 30, 2012, Defendants' counsel wrote in response to a motion to compel the following:

> Plaintiff also wants production of all closed session tapes in defendants' possession, even those that did not pertain to her. Defendants produced all of the closed session minutes and tapes in their possession during which plaintiff was discussed, but plaintiff wants all of them, because she does not trust that the production was complete. Plaintiff is concerned that defendants might have purposely withheld tapes where plaintiff was discussed, and wants to fish through all tapes to determine if there is relevant information contained in them.
>
> Plaintiff's concern about the ethical conduct of an officer of the court (defendants' counsel) is misplaced. Defendants' counsel's signing of the document production is in itself an affidavit of its completeness. Fed. R. Civ. P. 26 (g)(1). Nevertheless, defendants' counsel will sign a specific affidavit stating that he has reviewed all of the tapes, and has isolated those which pertain to plaintiff and turned those over, if it will satisfy plaintiff's suspicion.

(Doc. 54 at 5-6). Plaintiff contends this proves Defendants' counsel lied to the Court and to Plaintiff because the passage above is belied by Defendants' counsel's later statements that he had in fact been in possession of a March 2009 audio recording in which Defendants do discuss Plaintiff. Plaintiff also argues that Defendants' counsel proved himself a liar by making a statement in June 2013 that he had not found anything on a tape from April 2010 about the Plaintiff, yet sending an audio recording of the April 2010 meeting about the Plaintiff a few weeks later.

As the litigation progressed, discovery requests and documents were exchanged and depositions were scheduled, canceled, rescheduled and taken. The parties have since become enthralled in incidents of cantankerous behavior, for

which they, mainly Plaintiff, have been filing numerous and sometimes voluminous submissions to the court.[4]

### DISCUSSION

Plaintiff's motion for default judgment and sanctions focuses on three primary issues.  First, Plaintiff complains that Defendants have destroyed evidence in this case and that default judgment is the appropriate sanction.  The R&R found that sanctions were not appropriate and the Plaintiff timely objected to this finding. Second, Plaintiff complains that Defendants have withheld evidence and that default judgment is appropriate. The R&R found that sanctions were not appropriate and the Plaintiff timely objected to this finding. Third, Plaintiff complains that Defendants' counsel has engaged in misconduct during depositions that requires court-imposed sanction. The R&R did not discuss whether sanctions were appropriate for defense counsel's deposition behavior and the Plaintiff timely objected to this lack of discussion. The Court will address each issue separately.

As an intial matter, Plaintiff makes much of the Defendants' counsel's November 2012 representation to the Court that he had reviewed *all* the audiotapes of closed school board sessions. The Court does not read that statement as a sweeping proposition that every audiotape about the Plaintiff was reviewed by counsel and then produced to Plaintiff at that time. Rather it seems that Defendants' counsel had already limited his discussion to all the tapes *in the Defendants' possession*, as that language was used twice in the paragraph immediately preceding his purported lie to the Court. (*See* Doc. 54 at 5-6).  The

---

[4] Plaintiff's motion for sanctions is forty-one pages long and carries with it another 792 pages of ancillary materials.

Court has not seen any evidence that Defendants' counsel knew about either the destroyed audiotapes or the April 2010 audiotape in November 2012 when he made the representation that he had reviewed all the audiotapes of closed school board sessions.

## I.  Destruction of Evidence

Plaintiff contends that Defendants should face default judgment or at least some other sanction for their destruction of audiotaped recordings of closed session meetings in which matters relevant to this lawsuit were discussed.  In her motion (Doc. 97), Plaintiff argues that Defendants violated the Illinois Open Meetings Act, 5 ILCS 120/1 *et. seq.* ("OMA") and their own school district's policy by failing to keep audio recordings of all closed session meetings for a period of not less than eighteen (18) months from the date of recording. (Doc. 97 at $4 - 10$).  Plaintiff did not mention Illinois common law in her motion but now asserts it in her Objection to the R&R. (Doc. 113). Plaintiff now argues that Defendants' violation of OMA was by its very nature a violation of the Illinois common law, and along with Defendants' violation of their own policy, provide the necessary bases for the Court to conclude that Defendants engaged in spoliation of evidence. (Doc. 97 at 5).

The depositions of Randy Vincent and other Defendants revealed that he was the one responsible for destroying/recycling[5] tapes at the Fieldcrest School Board's direction because he was the incumbent superintendent. (Doc. 97-14 at 126). When asked when the decision was made to destroy the tapes of closed session meetings

---

[5] Plaintiff uses the term "destroy" and Defendants use the term "recycle" to denote the same action of spoiling the evidence so the Court uses the terms interchangeably throughout this Order and Opinion.

occurring before January 2009, Mr. Vincent dodged the question by stating such answer was in the minutes.  (Doc. 97-14 at 127). Plaintiff did not follow up with questions that would pin Mr. Vincent down on what he knew or remembered about the decision to destroy the tapes. Later, Plaintiff asked Mr. Vincent directly were the tapes destroyed after the filing of this action and Mr. Vincent responded he did not know. (Doc. 97-14 at 129). All the deposed witnesses have disclaimed knowledge of when and how the tapes came to be recycled.

Plaintiff then asked Mr. Vincent questions to attempt to wedge him into an endgame dilemma in regard to the destroyed tapes. On the one hand, she tried to establish that if Defendants destroyed the tapes prior to the filing of this action they would have still violated their own school district's policy and the OMA, which provided concurrent, yet distinct, duties to preserve. On the other hand, if the tapes were destroyed in accordance with OMA's and the school district's policy's defined time parameters, Defendants would have necessarily destroyed tapes dating as far back as December 2008 *after* the lawsuit had been filed anyway, thereby violating the litigation hold doctrine. According to Plaintiff, both these scenarios yield the same result of spoiled evidence and both scenarios are equally sanctionable.

Plaintiff's clear contention is that the Defendants' violations of their duties to preserve imposed upon Defendants by the OMA and by their district's policy was in and of itself sanctionable.  Plaintiff objects that the R&R misapplied the law when it did not seize upon the fact that these preservation duties rendered Defendants'

conduct sanctionable. Again, nowhere in the motion (Doc. 97) has this Court found any mention of Illinois common law regarding sanctions.[6]

The R&R found that for purposes of determining whether spoliation in this federal action occurred, the date beyond which destruction of the tapes could amount to sanctionable spoliation was the date of service of the lawsuit. (Doc. 112 at 7). In the Magistrate Judge's view, service of the lawsuit constituted the date when Defendants could not possibly argue they were not on notice of the litigation. (*Id.*).[7] This is important because for spoliation of evidence analyses, "[a]ctionable spoliation… occurs only when the duty to preserve existing evidence has been breached." *Duran v. Town of Cicero*, Ill., 653 F.3d 632, 644 (7th Cir. 2011).

---

[6] According to the Plaintiff:

> The Report says that the Federal litigation hold doctrine and the Illinois common law litigation hold doctrine were not violated because the audio tapes were all recorded prior to the filing of the suit so the Defendants could not have known she would file suit. (Doc. No. 112, p. 7) The Report misunderstands the Illinois common law and wrongly focused on the pre-suit Federal litigation hold doctrine when the post-suit litigation hold doctrine is the key issue.

(Doc. 113 at 4). The R&R is ambiguous in that it states: "The tapes in question all predated June of 2010. Destruction of those tapes did not run afoul of the litigation hold doctrine." (Doc. 112 at 7). However, the R&R does not state what Plaintiff contends it does. Moreover, the R&R clarifies later that the alleged violations occurred not at the meetings, which is when the recordings were made, but when the recordings were destroyed. (*Id.* at 8). The timing of the destruction of the tapes is an important factor in a sanctions-for-spoliation analysis.

[7] Plaintiff contends the correct date for which the Defendants should have known litigation was reasonably forseeable was actually upon receipt of a letter dated March 24, 2010 in which Plaintiff alleged she was the victim of disparate treatment on the basis of her gender.  Defendants admit that such letter was sent and received by them.  (Doc. 95 at 13). Based on that letter, this Court agrees with Plaintiff that the date Defendants received Plaintiff's March 24, 2010 letter was the date they should have reasonably anticipated a potential lawsuit.

The existence of a general duty to preserve is not the proper prerequisite for assessing sanctions in federal court though. The duty to preserve at issue must relate directly to the litigation itself. *See Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008) ("[C]ourts have found a spoliation sanction to be proper only where a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent."). This is important. The OMA imposes a <u>general</u> duty to preserve audio recordings of closed session meetings, not a <u>specific</u> duty to preserve evidence for litigation, and certainly not for this specific litigation.[8]

Moreover, bad faith is a prerequisite to imposing sanctions for the destruction of evidence. *Id*. Bad faith in this context means that the destruction of the evidence was done in order to hide adverse information from the opposing side. *Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir. 1998). This is why the Magistrate Judge focused on the timing of the destruction of the tapes.

Regardless of the general duties to preserve provided by the OMA and the school district's policy, for purposes of sanctioning conduct, the Court must be able to determine whether the Defendants destroyed the tapes in order to hide information from the Plaintiff. If the tapes were destroyed before the Defendants

---

[8] One can be sure of this because of section 2.06(e) of OMA, which provides in relevant part:

> Unless the public body has made a determination that the verbatim recording no longer requires confidential treatment or otherwise consents to disclosure, the verbatim record of a meeting closed to the public shall not be open for public inspection or subject to discovery in any administrative or judicial proceeding other than one brought to enforce this Act.

had a reasonable indication of potential litigation with Plaintiff, then it is substantially less likely the destruction was done to hide discoverable information from the Plaintiff. In such a case, the Court will not infer bad faith. If, however, the tapes were destroyed after the Defendants had a reasonable indication of potential litigation with Plaintiff, then it is substantially likely the destruction was done to hide information from the Plaintiff.  If this were the case, the Court would infer bad faith. Unfortunately, no one seems to know when the tapes were destroyed. The record suggests, and the Magistrate Judge certainly believed, that there is no way to know when the tapes were actually destroyed.

Plaintiff believes she should not be burdened with showing when the actual destruction of the tapes occurred. She cites two cases in support of that proposition. Plaintiff writes:

> The Plaintiff does not have the burden of proving the destruction was illegal; the Defendants have the burden of proving to the Court that the destruction was legal. *Buonauro v. City of Berwyn*, 2011 WL 3754820 *11-12 (N.D. Ill. 2011) (finding bad faith for destruction of audio tape records in violation of the Open Meetings Act when "the City's response provides little or no explanation of who, where, when, or how the tapes were erased" and holding "the Court cannot invent reasons for the City's action."); *Plunk v. Village of Elwood, Ill.*, 2009 WL 1444436 at *11-12 (N.D. Ill. 2009) ("In fact, the defendants have not offered any explanation for the fact that the audiotape of the meeting is now blank. … Defendants have offered no explanation as to why they failed to preserve an audiotape which … the Village was mandated by state law to preserve.")

(Doc. 113 at 8-9). Plaintiff goes on to argue in her Objection that these two cases are both "exactly on point with the instant case, as both imposed sanctions for the destruction of closed-session audio tapes in violation of the OMA." (Doc. 113 at 11).

Plaintiff has misread both cases and misstates the impact of the OMA violations on each court's decision. Consequently, the cited cases do not support her argument.

First, Plaintiff ignores that in *Plunk v. Village of Elwood, Ill.*, the Court explicitly stated it was the burden of the party seeking sanctions to prove such sanctions were warranted. No. 07 C 88, 2009 WL 1444436, at *12 (N.D. Ill. May 20, 2009). That means the Plaintiff must be able to point to something for which the Court can conclude not just that general duties were violated, but that <u>specific</u> duties to preserve were violated in <u>bad faith</u>.

Second, both *Buonauro*, No. 08 C 6687, 2011 WL 3754820 (N.D. Ill. Aug. 25, 2011), and *Plunk*, 2009 WL 1444436, contain facts <u>not found here</u> that sufficiently distinguish those cases from this case and supported the findings of sanctions there. In *Buonauro*, for example, the Court specifically found that the party against whom sanctions were sought "knew that litigation had actually commenced by the time the first tape was erased" and that the party had "acted at least four separate times to erase tapes." 2011 WL 3754820, at *11-12. In *Plunk*, the Court found that the party against whom sanctions were sought "was on notice that any action it took with respect to the [opposing party]'s contract would, in all likelihood, be the subject of future litigation" and that there was uncontroverted evidence from an expert witness that the destruction of the evidence was not an inadvertent mistake but rather the result of a professional erasure or replacement with a blank tape. 2009 WL 1444436, at *10-11. In those cases specific factual findings beyond the fact that the parties had violated the OMA provided the bases for sanctions.

Plaintiff suggests this Court sanction the Defendants for merely violating the OMA and the school district's policy. In support of that, Plaintiff cites two cases she contends stand for the proposition that destroying records in violation of the OMA in and of itself constitutes bad faith. First, Plaintiff cites *Latimore v. Citibank Fed. Sav. Bank*, 151 F.3d 712 (7th Cir. 1998) for the proposition that a "violation of a recordretention [*sic*] regulation creates a presumption that the missing record contained evidence adverse to the violator." *Id.* at 716. Plaintiff's citation to this case misses the mark however, because in the very next sentence of the decision, the Seventh Circuit held the missing record there—the would be spoiled evidence for purposes of the instant motion and R&R—was inadvertent and thus, could not constitute a violation of the regulation. *Id.* So, even under *Latimore*, the Court would still have to determine whether the destruction of evidence was deliberate in order to presume the missing evidence was adverse to Defendants.

*Latimore* cites another case, *S.C. Johnson & Son, Inc. v. Louisville & Nashville R. Co.*, 695 F.2d 253, 258 (7th Cir. 1982), in which the Seventh Circuit explained that in order for a court to apply the principle of "all things are presumed against a wrongdoer" and allow a fact finder to infer negatively from spoiled evidence, the "court must first be of the opinion from the fact that a party has destroyed evidence that the party did so in bad faith." 151 F.3d at 716. The Seventh Circuit went on to explain that the "crucial element is not that the evidence was destroyed but rather the reason for the destruction." 695 F.2d at 258; *see also Mathis*, 136 F.3d at 1155 ("That the documents were destroyed *intentionally* no one can doubt, but 'bad faith' means destruction for the purpose of hiding adverse

information."). Thus, destruction of evidence in and of itself cannot support sanctions, and definitely not sanctions of the magnitude of a default judgment.

Similarly, Plaintiff's citation to *Rosenthal Collins Group, LLC v. Trading Technologies Intern., Inc.*, No. 05 C 4088, 2011 WL 722467, at *7 (N.D. Ill. Feb. 23, 2011) to support the contention that a "party's failure to preserve evidence alone constitutes bad faith," (Doc. 113 at 10), is taken out of context and does not accurately reflect that court's finding. In *Rosenthal*, the court specifically <u>found</u> that the plaintiff deliberately destroyed evidence, not only after the suit was brought, but also after the plaintiff was ordered to turn over the evidence that was eventually destroyed. 2011 WL 722467, at *8-11. There has been no similar finding in this case.

This all takes us back to square one—sanctions in federal court require a finding of bad faith. *Trask-Morton*, 534 F.3d at 681. Bad faith means that the destruction of the evidence was done in order to hide adverse information from the opposing side. *Mathis*, 136 F.3d at 1155. The way to determine whether evidence was destroyed in order to hide adverse information is to either (a) assess the actual evidence, which one typically cannot do because the evidence no longer exists, or (b) infer bad intent based upon when the destruction occurred in relation to the destroyer's knowledge that the evidence was relevant to potential litigation. This Court has not been provided with any way of knowing when the audiotaped recordings were destroyed and neither was the Magistrate Judge. On that basis it is improper to award sanctions for the spoliation of evidence based upon the mere speculation that the evidence must have been adverse to Defendants.

Plaintiff strongly objects that the R&R ignores the Illinois common law of spoliation. Plaintiff's reliance on the Illinois common law of spoliation in support of sanctions is misplaced for the same reasons just discussed. As Plaintiff correctly notes, "a defendant owes a duty of due care to preserve evidence if a reasonable person in the defendant's position <u>should have foreseen that the evidence was material to a potential civil action</u>." *Boyd v. Travelers Ins. Co.*, 652 N.E.2d 267, 271 (Ill. 1995) (emphasis added). This is not some generalized duty to preserve, such as the duty provided by the OMA, but a duty to preserve that arises in direct relation to the pendency of potential litigation. Consequently, the issue of the timing of the destruction of the evidence arises again. If the destruction of the evidence occurred before Defendants should have foreseen that the evidence was material to a potential civil action, then the Court could fairly conclude the Defendants violated the duty to preserve as articulated in *Boyd*, 652 N.E.2d at 271. However, no one has presented any evidence of when the destruction occurred. Sanctions are therefore not appropriate under these circumstances.

## II.  Withholding Evidence

Plaintiff complains that Defendants withheld evidence, a March 2009 audio recording and an April 2010 audio recording, and supplied them only after Defendants' depositions concluded. Plaintiff takes particular issue with the fact that they did not receive this evidence until after Mr. Vincent's deposition.  (Doc. 97 at 10). These complaints, while not entirely baseless, are not as egregious as Plaintiff seems to think and do not call for sanctions.

First, Plaintiff's point that the evidence was not turned over until Mr. Vincent's deposition was concluded is incorrect as Mr. Vincent's deposition was merely adjourned with the clear expectation of both parties' counsel to be continued later. (Doc. 97-14 at 130). The Court is unsure why the Plaintiff would even present this point when it is so clearly incorrect.

Second, there is no evidence of intentional withholding of anything. In regard to the March 2009 audiotape, defense counsel explains that he "missed it" during the initial review. (Doc. 97-1 at 1). Plaintiff does not believe counsel and argues that the content is so clearly relevant that no reasonable lawyer would miss this evidence. (Doc. 97 at 11-12).  That is not evidence; it is merely speculation. Yes, Defendants should have turned the March 2009 audio over earlier and perhaps defense counsel should improve their document review procedures and skills, but there is no indication that Defendants' counsel's delay was intentional.

There is nothing for the Court to even infer bad faith. For instance, Plaintiff has not explained what the Defendants have gained by withholding the March 2009 audio yet turning it over while Mr. Vincent's deposition is still pending.  After all, the overwhelming majority of the "smoking gun" evidence, at least the evidence Plaintiff highlights in her motion (Doc. 97 at 11), comes from the mouth of Mr. Vincent, and Plaintiff still has the opportunity to depose Mr. Vincent.

Similarly, as to the April 2010 tape, Defendants' counsel has supplied evidence that he asked for relevant evidence from his client in advance of June 2013 and did not receive the April 2010 tape, and then asked for it again upon the (dutiful) insistence of Plaintiff's counsel. (Doc. 103-9 at 2). Plaintiff argues that

something dubious occurred with the transferring of the audio from the microcassette to a CD but it seems from the Plaintiff's own evidence that her counsel at minimum expected some data processing to occur. (Doc. 97-1 at 2 ("Please *prepare* the "found" tape for duplication as soon as possible.") Moreover, if Defendants wished to doctor the evidence so that Plaintiff could not use it, it stands to reason Defendants would not have left the "admission" of Mr. Vincent, as Plaintiff characterizes it (Doc. 97 at 13), audible on the tape.

Finally, it appears Plaintiff is reading words out of context regarding defense counsel's "admission" that he listened to the tape and lied when he wrote: "I didn't find anything on a tape from April 2010 about the plaintiff, despite the Minute reference." (Doc. 91-1 at 1). According to Plaintiff, defense counsel is communicating that he reviewed the April 2010 tape and determined nothing concerning Plaintiff was on the audio. But it is just as conceivable counsel was communicating that he had not found a tape from April 2010. He says he did not find anything on *a* tape. (*Id.*). If he was trying to communicate that he reviewed a tape and found nothing it is more likely he would have said: "I didn't find anything on *the* tape from April 2010 about the plaintiff, despite the Minute reference." The interpretation that he was communicating that he did not find a tape is supported by his email to his client two days later specifically asking for an April 2010 audiotape. (Doc 103-9 at 1).[9]

_____

[9] The Court acknowledges it is troubled by defense counsel's assertion that there was nothing on the tape he brought to the Plaintiff's deposition, assuming Plaintiff's affidavit is correct. (Doc. 105-2). Such a statement would justify the listener to assume that counsel had in fact reviewed the tape. Since, the contents of the tape have made its way to Plaintiff while Mr. Vincent's deposition is still pending, the

In sum, the evidence shows defense counsel should be more precise in his language and diligent in his document review, but it does not demonstrate any deceit or bad intent.  Therefore, no sanctions are appropriate.

## III.   Deposition Conduct

Plaintiff brings up several instances of alleged bad conduct during the depositions of several Defendants and seeks sanctions. The Court has reviewed all of the instances of bad behavior raised by the Plaintiff in her motion, (Doc. 97 at 15-32), and her Objection (Doc. 113 at 13-16) and reviewed the relevant portions of the depositions. Both sides have engaged in deposition antics that have wasted time and resources. The Court finds that Defendants' counsel crossed the line into misconduct once, in the Reichman deposition. The other instances have been either exaggerated considerably or do not otherwise constitute sanctionable conduct because either Plaintiff's counsel was able to elicit an answer or the witness went ahead and answered the questions without regard to the objection.

After reviewing the deposition transcripts, it seems defense counsel's abrupt private conferences were designed to break up Plaintiff's counsel's momentum in questioning and the Court finds them to be objectionable, but not entirely impermissible. In *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U. A.*, 657 F.2d 890, 902 (7th Cir. 1981), the Court mentioned these abrupt, private conferences are not allowed but did not prescribe a penalty for them. There, the court documented 127 different private conferences taken during depositions. *Id.* at

Court is satisfied that there has been minimal prejudice suffered by Plaintiff and will not inquire further into defense counsel's statement. However, counsel is admonished to be more precise in his communications.

901. Here, Plaintiff puts the number at thirteen. (Doc. 97 at 17). Moreover, in *Eggleston*, many of the private conferences were taken while questions were pending. *Id.* at 901-2. Here, even though defense counsel would cut off a question before it could fairly get started, he did not take conferences while questions were pending. Defense counsel's private conferences did not seem to frustrate the purpose of the deposition, which is to get to the factual testimony of the witness. *Hunt v. DaVita*, 680 F.3d 775, 780 (7th Cir. 2012). Therefore, the Court will not sanction defense counsel for this conduct. However, defense counsel is admonished to limit these conferences to instances where privilege is at issue or the witness is so clearly confused or flustered that she requires a break.

Plaintiff's counsel also engaged in misconduct at the depositions. For example, Plaintiff's counsel cloaked his attempts at intimidating witnesses in the guise of discovering information concerning punitive damages. (*See, e.g.*, Doc. 97-20 at 61-63; Doc. 97-19 at 73; Doc. 97-16 at 69-70). The Court finds Plaintiff's counsel's line of questioning distasteful and disrespectful. It is fine to ask questions relevant to discovering assets and ability to pay punitive damages but to ask questions such as, "Are you aware that punitive damages are not dischargeable in bankruptcy?" and "Did you know that if those damages were entered, [Plaintiff] could file a suit for collection against you and foreclose on your house or freeze your bank assets?", was nothing more than bullying. These questions seem designed to do nothing more than scare the witnesses instead of obtaining discoverable information.

### A.     Reichman Deposition

In the July 8, 2013 deposition of Danielle Reichman, the following questions

and answers took place:

```
12    BY MR. SOKN:
13    Q. Did you approve written particular minutes
14         for a closed session prior to the
15         destruction of any audiotape?
16    A. We approved the minutes that the secretary
17         takes, not closed session -- not the tapes.
18    Q. So you never sat down, listened to the
19         audiotapes, and then approved a written
20         document that discussed what happened on the
21         tapes?
22    A. No. We don't hear --
23    MR. DICIANNI: No, no, you answered
24         the question.
1     THE WITNESS: Sorry.
2
3     BY MR. SOKN:
4     Q. You don't hear what?
5     A. Nothing.
6     Q. Well, you started to say something. Finish
7     your thought, please.
8     MR. DICIANNI: That's not a question.
9         I'll object. You don't have to answer.
```

(Doc. 97-16 at 22-23). Plaintiff's counsel then moved on to another topic. Defense

counsel clearly improperly directed the deponent to cut off her answer, and then

improperly objected when Plaintiff's counsel tried to get the witness to finish her

answer. (*Id.*)  It is clear that defense counsel was trying to impede Plaintiff's counsel

from getting the complete response from the witness.  That is sanctionable.

### B.     Cook Deposition

Although the Court finds nothing sanctionable occurred in the July 8, 2013

deposition of Heidi Cook, the Plaintiff's allegations will be discussed since in the

Plaintiff's view, this was a clear example of defense counsel improperly coaching the

witness. Plaintiff's counsel makes much about the fact that at one point Ms. Cook stated Plaintiff was a part-time principal because of the economics of the district and then she glossed her answer to the same question after an abrupt conference with her counsel.  (Doc. 97-20 at 24).  Although it is very unseemly that counsel abruptly took a break, it does not seem that Ms. Cook changed the substance of her answer. She first stated Plaintiff was a part-time principal because of the economics of the district and budget concerns.  After the break, during which she admitted talking to her counsel, she responded to the same question that it had been found that the duties for the Fieldcrest South School could be done by a part-time principal, it was an administrative decision.  (*Id.* at 25). Although the language is different the substance of the responses is the same: Ms. Cook is saying that the board found that a principal at the school could do the work on a part-time basis. This is obviously a budgetary reason as well as an administrative reason. Therefore, Plaintiff's counsel's point that defense counsel coached Ms. Cook to change her answer is not well taken and does not require sanctions. (Doc. 97 at 20-25).

The Court finds Ms. Cook, not her lawyer, engaged in clear obstructionist behavior. (Doc. 97-20 at 28-30). However, difficult witnesses are part and parcel of litigation. When asked a hypothetical about whether Doug Roberts should have gotten a raise given he moved from a school with a full-time principal to a school where the principal was determined to be able to perform as a part-time principal, Ms. Cook failed to answer. (*Id.*) When she finally responded she did not really answer the question; she merely discounted the value of her opinion. Although Plaintiff's counsel discredits defense counsel, it is clear defense counsel actually

tried to get Ms. Cook to answer by asking her, "Are you able to answer the question?" and directed her to go ahead and answer. (*Id.* at 29). Plaintiff's counsel thinks defense counsel went too far when he directed Ms. Cook not to answer the same question later after she had given a non-responsive answer. (*Id.* at 31-32). The Court interprets the transcript differently. Defense counsel asked Ms. Cook "Is there any more elaboration you would make on that answer?" (Doc. 97-20 at 31). Only after she replied no and Plaintiff's counsel said he would keep rereading it and *himself* suggested that defense counsel instruct the witness not to answer, did defense counsel instruct her not to answer. The Court interprets this as defense counsel trying to facilitate the deposition, rather than impede it.

## C. Remedies

The Court finds that Defendants' counsel, Mr. Dicianni, acted in bad faith when he directed the deponent, Danielle Reichman, to cut off an answer and improperly objected when Plaintiff's counsel tried to get the witness to finish her answer. (Doc. 97-16 at 22-23). The Court finds that defense counsel was trying to impede Plaintiff's counsel from getting the complete response from the witness.

Federal courts have inherent power to sanction conduct that abuses the judicial process. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991). Moreover, district courts possess "wide discretion to manage litigation." *Fed. Election Comm'n v. Al Salvi for Senate Comm.*, 205 F.3d 1015, 1018 (7th Cir. 2000). Although Plaintiff never specified in her motion (Doc. 97) or Objection (Doc. 113) on what authority, Federal Rule of Civil Procedure 37 or the Court's inherent power, she was moving for sanctions, the Court recognizes that this particular offense is most akin

to a Rule 37(a)(4) evasive or incomplete answer. Therefore, the Court orders that Reichman be deposed again at a mutually convenient time for both the Plaintiff and Reichman.  The issues for the deposition should be limited to whether Reichman or other Board members ever sat down, listened to the audiotapes of closed session meetings, and then approved a written document that discussed what happened on the audiotapes. The Court does not envision many questions would be necessary to flesh out Ms. Reichman's complete answer and her understanding, if she has any such understanding, of why her attorney cut off her answer, subject of course to attorney-client privilege limitations. Mr. Dicianni and/or his law firm must bear the costs of this deposition and whatever reasonable attorney's fees are incurred.

## CONCLUSION

While neither side is beyond reproach, Plaintiff's counsel in particular has used a combative and vitriolic tone in her briefs that is unwarranted and unacceptable.[10] Counsel consistently dramatizes events and overreacts to the slightest of catalysts. Worse yet, Plaintiff's counsel's reading of cases seems disingenuous, as counsel time and again misstates the law and ignores glaring factual differences between this action and cited cases. Plaintiff's counsel are reminded of their duties of candor to the court arising under Illinois Supreme Court Rule of Professional Conduct 3.3.

Unfortunately, defense counsel has been reacting almost as badly, particularly with counsel's poor and questionable use of redacted transcript

---

[10] For example, in her reply to the motion for sanctions, Plaintiff referred to one of Defendants' claims as "asinine." (Doc. 105-1 at 6). Such language is inappropriate, unprofessional and unnecessary.

materials, which in a way supports the Plaintiff's decision to attach the entire transcripts of the deposed witnesses. The result is litigation mired in unnecessary filings that do not help expedite the resolution of this case.  The Court admonishes both counsel to curb their behavior going forward, take heed of Illinois Supreme Court Rule of Professional Conduct 3.4, which demands fairness to an opposing party and counsel, and try to maintain zealous advocacy without petulant combativeness.

Now that this Court has been brought into the fray of these discovery disputes, it will closely scrutinize the behavior of counsel and their written submissions. The parties and their counsel are given a clean slate to comport with Local Rule 83.6 and the Illinois Rules of Professional Conduct. However, they should take heed that further discovery abuses, unprofessional behavior, half-truths, and misleading or unsupported legal and factual assertions will not be tolerated and will receive harsh sanctions. Should the parties encounter a problem in the Reichman deposition, or any other subsequent depositions, they can call this Court directly.

IT IS THEREFORE ORDERED, Magistrate Judge Gorman's Report & Recommendation (Doc. 112) is ADOPTED IN PART and MODIFIED IN PART and Plaintiff's Motion for Default and Sanctions (Doc. 97) is DENIED IN PART and GRANTED IN PART. Danielle Reichman is to be deposed on the limited topic discussed within this Order and Opinion. This matter is REFERRED BACK to Magistrate Judge Gorman for further pretrial proceedings.

Entered this 16th day of January, 2014.

s/ Joe B. McDade
_____
JOE BILLY McDADE
United States Senior District Judge