# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| DORRENE SOKN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.   10-cv-1122 |
| | ) | |
| FIELDCREST COMMUNITY UNIT | ) | |
| SCHOOL DISTRICT NO. 8, an Illinois | ) | |
| Local Governmental Entity, RANDY | ) | |
| VINCENT, Superintendent, in his | ) | |
| individual and official capacities, JOE | ) | |
| KIRKPATRICK, President of the Board of | ) | |
| Education, in his individual capacity, | ) | |
| THOMAS BARTH, Vice President of the | ) | |
| Board of Education, in his individual | ) | |
| capacity, TAMMI COONS, Secretary of | ) | |
| the Board of Education, in her individual | ) | |
| capacity, SCOTT HILLENBURG, | ) | |
| Member of the Board of Education, in his | ) | |
| individual capacity, GREG | ) | |
| KROESCHEN, Member of the Board of | ) | |
| Education, in his individual capacity, | ) | |
| HEIDI COOK, Former Member of the | ) | |
| Board of Education, in her individual | ) | |
| capacity, TIM MCNAMARA, Member of | ) | |
| the Board of Education, in his individual | ) | |
| capacity, DANIELLE REICHMAN, | ) | |
| Member of the Board of Education, in her | ) | |
| individual capacity, and LINDA | ) | |
| REIGNER, Former Member of the Board | ) | |
| of Education, in her individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

# O P I N I O N   &   O R D E R

This employment discrimination matter is before the Court on cross Motions

for Summary Judgment. (Docs. 168 & 170). Both Motions are fully briefed and

ready for disposition. Also pending before the Court are Plaintiff's Motion for Leave to Submit a Proposed Jury Instruction (Doc. 167) and Motion to Strike Re: Randy Vincent Affidavits (Doc. 188). For the reasons stated below, Plaintiff's Motion for Summary Judgment is DENIED and Defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part. Plaintiff's Motion for Leave to Submit a Proposed Jury Instruction (Doc. 167) is GRANTED. The instruction is hereby deemed submitted. Plaintiff's Motion to Strike Re: Randy Vincent Affidavits (Doc. 188) is DENIED.

The Plaintiff has requested oral argument on her motion but has failed to explain why such argument is necessary. *See* CDIL-LR 7.1(A)(2). The Court has determined that the facts and legal arguments are adequately presented in the briefs and the record and the decisional process would not be significantly aided by oral argument.

## LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant may demonstrate the absence of a genuine dispute of material fact by citing to admissible evidence, or by showing that the nonmovant cannot produce admissible evidence to support a genuine dispute of material fact. Fed. R. Civ. P. 56(c)(1). Upon such a showing by the movant, the nonmovant may not simply rest

on his or her allegations in the complaint, "[t]he nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence." *Warsco v. Preferred Technical Grp.*, 258 F.3d 557, 563 (7th Cir. 2001) (internal quotations and citation omitted); Fed. R. Civ. P. 56(c)(1). Typically, all inferences drawn from the facts must be construed in favor of the non-movant, but the court is not required to draw every conceivable inference from the record. *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). At the summary judgment stage, however, the court may not resolve issues of fact; disputed material facts must be left for resolution at trial. *Anderson*, 477 U.S. at 249-50.

"On cross-motions for summary judgment, the same standard of review in Federal Rule of Civil Procedure 56 applies to each movant." *Continental Cas. Co. v. Nw. Nat. Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005). The Seventh Circuit has explained that courts "look to the burden of proof that each party would bear on an issue of trial; we then require that party to go beyond the pleadings and affirmatively establish a genuine issue of material fact." *Diaz v. Prudential Ins. Co. of America*, 499 F.3d 540, 643 (7th Cir. 2007) (quoting *Santaella v. Metropolitan Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997)). Cross-motions for summary judgment are considered separately, and each party requesting summary judgment must satisfy the above standard before judgment will be granted in its favor. *See Tegtmeier v. Midwest Operating Eng'rs Pension Trust Fund*, 390 F.3d 1040, 1045 (7th Cir. 2004); *Santaella*, 123 F.3d at 461. Thus, the facts are construed in favor of

the non-moving party, which differs depending on which motion is under consideration. *Tegtmeier*, 390 F.3d at 1045.

FACTS

Plaintiff was employed by Defendant Fieldcrest Community Unit School District No. 6 ("Fieldcrest") as the principal at Fieldcrest Elementary School South ("Fieldcrest South") from July 1, 2007 to June 30, 2010. Fieldcrest is a local governmental entity. Each of the individual Defendants were or are members of the Fieldcrest Board of Education (the "Board") acting in the scope of their employment at all times relevant to this suit except for Randy Vincent, who was the Fieldcrest Superintendent and therefore a Fieldcrest employee and not a member of its Board, during most of the times relevant to this lawsuit. Despite that he was not a member of the Board, Mr. Vincent held significant sway over the Board members and there is abundant evidence that the Board oftentimes rubberstamped Mr. Vincent's recommendations.

Fieldcrest has four schools in its district. Fieldcrest South educates children in grades preschool through fourth grade. Fieldcrest East educates children in grades kindergarten through fourth grade, as well as sixth and seventh grades. Fieldcrest West educates children in kindergarten through sixth grade. Lastly, Fieldcrest High educates high school children. Plaintiff was the only female principal employed by Fieldcrest during the times relevant to this suit.

Prior to hiring Plaintiff, Fieldcrest South operated without its own principal for three school years. During that time, the three other Fieldcrest principals rotated and covered the principal responsibilities at Fieldcrest South or then

Superintendent Vincent covered the principal responsibilities at Fieldcrest South in addition to his own superintendent duties. In advance of the 2007-2008 school year, Fieldcrest decided to hire someone to cover the principal duties at Fieldcrest South exclusively and to teach special education. Plaintiff was selected for the new position over a male candidate who was already employed by Fieldcrest at its high school.

Plaintiff entered into an employment contract with Fieldcrest that was substantially similar to the contracts between Fieldcrest and its other principals except that Plaintiff's contract contained the following provision in the "Duties" section: "In addition, no more than 50% of the assignment of the principal will be teaching." Plaintiff disputes that the contract stipulated that she was not to spend more than fifty percent of her time in a teaching capacity. Defendants characterize Plaintiff as a part-time principal. Plaintiff disputes that characterization and points out that she was not allowed to ignore any administrative duties as principal and that she had the same principal duties as the male principals. Whatever the superficial semantics of her contract's "Duty" provision, it is clear that Fieldcrest and Plaintiff entered into a contract where up to fifty percent of Plaintiff's duties could include teaching, whereas none of the duties of the other Fieldcrest principals were to include teaching. Plaintiff did in fact teach her first two years at Fieldcrest South.

Plaintiff was paid less salary than two of Fieldcrest's male principals, Jim DeMay and William Lapp, and she received smaller percentage salary increases each year than the third male principal, Doug Roberts. Fieldcrest's three male

principals all received health benefits, while Plaintiff did not. At her job immediately prior to becoming Fieldcrest South's principal, Plaintiff elected to forego coverage under that employer's health insurance policy and instead utilized her spouse's health insurance coverage. At Fieldcrest, however, Plaintiff was told to enjoy the same health benefits as the other principals, she would have to take a reduction in salary. Plaintiff alleges that these disparities she suffered at Fieldcrest were due to her sex.

Plaintiff taught classes for the first two of the years and taught special education students only as needed in the third year in addition to her duties as Principal of Fieldcrest South. None of the male principals had any teaching duties.

In January of 2009, then-Superintendent Vincent told Plaintiff that she should start looking for another job because of teacher complaints. In March of 2009, Vincent reported to the Fieldcrest Board that he wanted to replace Plaintiff with Doug Roberts, the principal of Fieldcrest East, whom he had learned sought an opportunity to work closer to his home and without after-school supervision responsibilities. On July 6, 2009, after Plaintiff was informed on that date by Superintendent Vincent that she would receive only a 1% pay increase, she sent an email to him asking why she was receiving this level of increase, and what the other principals were earning. Superintendent Vincent replied, explaining that the other principals received increases around 4%, and that her smaller increase was due to the issues the two had previously discussed. On March 24, 2010 Plaintiff sent a certified letter to each of the individual Defendants in which she alleged she was the victim of disparate treatment on the basis of her gender. Defendants admit that

such letter was sent and received by them. On March 30, 2010, the school board, including each of the Defendant members, voted against renewing Plaintiff's contract. On April 30, 2010, Plaintiff filed her first Complaint against Defendants. (Doc. 1). The operative complaint in this action is currently the Fifth Amended Complaint (Doc. 114).

At all times relevant, the Defendants had a policy requiring that closed-session school board meetings were to be audio recorded. The policy seems to be designed to fulfill the requirements of the Illinois Open Meetings Act, 5 ILCS 120/1 *et. seq.* (the "OMA"). The policy and the OMA also require that the audio recordings of closed-session school board meetings not be destroyed until no less than eighteen months have passed since the recorded meeting and after a vote by the school board approving the destruction. Between May 1, 2007 and January 1, 2009, the Fieldcrest school board held an unknown number of closed-session meetings, for which audio recordings were made. During these closed-session school board meetings, matters material and relevant to Plaintiff's causes of action against the Defendants may have been discussed. The audio recordings of these closed-session school board meetings were erased without a vote by the school board approving the destruction. Plaintiff contends that the audio recordings of these closed-session school board meetings were erased at a time when the instant suit was either on file, reasonably foreseeable, or when a reasonable person would have foreseen that the audio recordings were material to a potential civil suit. There is no indication in the record before the Court of when the audio recordings of these closed-session meetings were actually erased.

I.    **Equal Pay Act**

Section 206 of Title 29 of the United States Code prohibits an employer from discriminating against its employees on the basis of sex by paying employees less than it pays employees of the opposite sex "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions; except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of product; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1). To establish an Equal Pay Act ("EPA") *prima facie* case, a "plaintiff must show: (1) that different wages are paid to employees of the opposite sex; (2) that the employees do equal work which requires equal skill, effort, and responsibility; and (3) that the employees have similar working conditions." *Fallon v. State of Illinois*, 882 F.2d 1206, 1208 (7th Cir. 1989). If the plaintiff establishes a *prima facie* case, the burden shifts to the "employer to provide evidence of any of the statutorily based affirmative defenses by showing that the pay disparity results from '(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.'" 29 U.S.C. § 206(d)(1); *Soto v. Adams Elevator Equip. Co.*, 941 F.2d 543, 548 (7th Cir. 1991).

Plaintiff presents evidence that she was employed on a three-year contract by Fieldcrest as a principal at Fieldcrest South from July 1, 2007 to June 30, 2010. During that time she was paid $73,000, $75,920, $76,679 for each respective year.

She also presents evidence that Fieldcrest employed three other principals, of whom all are male. William Lapp, the Fieldcrest High principal, began working for Fieldcrest High at a salary of $75,030 in 2005. During the period of time when Plaintiff worked for Fieldcrest, Lapp received salaries of $80,340, $83,955, and $87,733. Fieldcrest started Jim DeMay at $69,267 as the principal of Fieldcrest West in 2003. During the period of time when Plaintiff worked for Fieldcrest, DeMay received salaries of $76,547, $79,226, and $82,395. Doug Roberts, principal of Fieldcrest East, received salaries of $65,000 (2006-07), $68,250 (2007-08), and $71,321 (2008-09) for his first three years with Fieldcrest and $74,531 in Plaintiff's last year with Fieldcrest.

All three male principals received health benefits at no cost to them. The value of those benefits for the majority of the years at issue was $12,551 for years one and two, and $13,806 in year three. Plaintiff did not receive health benefits. According to Plaintiff, she was only given the Hobson's choice of receiving health benefits at a reduced salary or foregoing them altogether. Fieldcrest claims Plaintiff was originally offered a salary plus the option of receiving health benefits, but turned down the benefits so that she could earn a higher salary. There is competing evidence on this point, so the Court cannot conclude the issue of the denial of health benefits in favor of either side. The purpose of summary judgment is not to resolve factual disputes but rather to determine whether there is a genuine dispute of material fact that requires trial. Fed. R. Civ. P. 56(a); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

Nevertheless, the Court cannot ignore the benefit differential either. Wages are defined as "all payments made to (or on behalf of) an employee as remuneration for employment. The term includes all forms of compensation irrespective of the time of payment, whether ... deferred until a later date, and whether called wages, salary, profit sharing, expense account ... or some other name. Fringe benefits are deemed to be remuneration for employment." 29 C.F.R. § 1620.10. Furthermore, "[i]t is unlawful for an employer to discriminate between men and women performing equal work with regard to fringe benefits." 29 CFR § 1620.11. Vincent's deposition testimony reveals that had the male principals similarly sought to turn down benefits, their salaries potentially would have been augmented as well. With the health benefits differential, the male principals were compensated several thousands more than Plaintiff over the same period of time.

Unlike the three male principals, however, there is evidence that Fieldcrest hired Plaintiff as a part-time principal with the expectation that as much as half of her worktime could be dedicated to teaching. Plaintiff vigorously contests that she be labelled a "part-time principal" but the evidence presented demonstrates there is no factual dispute that Plaintiff had a clause negotiated into her contract carving out up to fifty percent of her assignment to teach as a teacher not administrate as a principal.

Next, the Court inquires into whether the Fieldcrest principals all performed "equal work" requiring "equal skill, effort and responsibility. . . under similar working conditions." *Stopka*, 141 F.3d at 686. Plaintiff rightly points out that the job of school principal contains a common core of administrative tasks and common

objective of supervising a school's academic progress and day-to-day functioning. However, in *Cullen v. Indiana Univ. Bd. of Trustees*, 338 F.3d 693, 699 (7th Cir. 2003), the Seventh Circuit held that even though a male and female held positions that shared a common core of activity as well as a common title of "program director", the positions were nevertheless unequal in terms of the actual responsibilities of the respective positions. Thus, *Cullen* instructs one to look beyond superficial indicia of commonality to determine whether two positions are actually equal. *Id.*; *see also Epstein v. Sec'y, U.S. Dep't of Treasury*, 739 F.2d 274, 277 (7th Cir. 1984).

The first inquiry into whether two people are performing equal work under the EPA is whether the position requires equal skill. In determining whether comparators have equal skill, courts look at whether the positions require the same levels of experience, training, education, and ability. *Cullen*, 338 F.3d at 699 (citing 29 C.F.R. § 1620.15(a)). Fieldcrest does not argue that Plaintiff lacked skill the other principals possessed so this element weighs in favor of the Plaintiff. The Court also finds the element of equal responsibility in favor of the Plaintiff as the evidence shows Plaintiff was as accountable for her school as the other principals were for their respective schools.

Next, the Court considers the remaining elements of effort and working conditions, which tend to blend together when considering the position of a school principal. At the outset, the Court rejects the premise that William Lapp and Plaintiff were doing equal work. It seems intuitive that a high school principal would have more issues to deal with in general, as well as a different working

environment, than an elementary school principal. Intuition aside however, Fieldcrest has produced evidence that Fieldcrest High had an enrollment of roughly 382 high-school aged children during times relevant to this action whereas Fieldcrest South had an enrollment of roughly 287 students. Plaintiff contends these amounts are about the same, but the Court finds that a student population differential of nearly one hundred students is not comparable. Moreover, children aged five through eleven generally attend kindergarten through fourth grade, while children typically aged fourteen through eighteen generally attend high school. In *Nuzzi v. Bourbonnais Elementary Sch. Dist.*, 360 F. App'x 664, 666 (7th Cir. 2010), the court discussed the relative numbers of staff and students and the ages of the supervised children as significant factors bearing on the dissimilitude of a female plaintiff and her male comparators. Here, the differences in the number and ages of students between Plaintiff's school, Fieldcrest South, and Lapp's school, Fieldcrest High, lead the Court to the conclusion that Lapp's and Plaintiff's working conditions and the requisite effort to do the respective jobs cannot be deemed equal.

Jim DeMay, principal of Fieldcrest West, and Doug Roberts, the principal of Fieldcrest East, are left as the potentially viable comparators to Plaintiff for purposes of the EPA claim. Plaintiff, along with DeMay and Roberts, had district-wide responsibility for attending Response to Intervention (RTI) meetings and serving on the RTI committee. Plaintiff had no other district-wide responsibilities. However, DeMay also had district-wide responsibility for curriculum development while Roberts had the district-wide responsibility to oversee Fieldcrest's Free and Reduced Lunch Program.

As for the schools, at all times relevant to this lawsuit, Fieldcrest West educated children in kindergarten through sixth grade, Fieldcrest East educated children in kindergarten through fourth grade and seventh and eighth grades, while Fieldcrest South educated children in prekindergarten through fourth grade. This means that both Roberts and DeMay had to oversee two higher grades with presumably older children as part of their schools' populations while Plaintiff did not. Plaintiff did integrate new pre-k children into her school each year while the other principals did not.

The Court concludes that these differences, of which there are no disputes, are sufficient to render the three principal positions sufficiently different to undermine Plaintiff's *prima facie* claim that they were substantially similar.

In *Sims-Fingers v. City of Indianapolis*, 493 F.3d 768 (7th Cir. 2007), the Seventh Circuit explained what a proper *prima facie* case under the EPA looks like. A viable EPA claim contains homogenous positions such as "two sixth-grade music teachers, having the same credentials and experience, teaching classes of roughly the same size in roughly comparable public schools in the same school district." *Id.* at 771. In that case, while there was the common position of park manager, the park managers supervised heterogeneous parks. *Id.* at 770. Similarly, here, the common position of principal is at issue, but the principals were working in heterogeneous schools with different student bodies and different staff.

Thus, the Court is faced with a principal of pre-k through fourth graders who was contractually excused to do non-principal work for up to fifty percent of her duties asserting that she was doing the same job under the same conditions as

principals who did not have such contractual permissions and who had district-wide responsibilities she did not. Moreover, two of the principals were responsible for two older grades of children that she was not and the third was responsible for the running of a high school with almost 100 more students. Given these undisputed facts, Plaintiff's position was not substantially similar to the others under existing precedent. Her EPA claim is denied for failure to meet the *prima facie* case.

## II.     Title VII Discrimination Claims

Plaintiff next alleges that Fieldcrest violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, 1) by paying her substantially less in salary and benefits than it paid to male principals, 2) by granting contract extensions or contract roll-overs to male principals but not to her and 3) in voting to not renew her contract of employment. (Doc. 114 at ¶101). The Court interprets the actions of granting contract extensions or contract roll-overs to male principals but not to Plaintiff and voting to not renew Plaintiff's contract as facets of the same claim and discusses it first.

### A.     Termination of Employment

Plaintiff's Title VII claim for not extending/renewing/rolling over her employment contract is actionable as an adverse employment action, *see Darchak v. City of Chicago Bd. Of Educ.*, 580 F.3d 622, 632 (7th Cir. 2009), and is conceptually separate from the pay differential issue. Plaintiff argues she has produced evidence of a successful claim of gender discrimination under both the direct and indirect methods of proof.

"Under the direct method, a plaintiff must provide either direct or circumstantial evidence that the employer had a discriminatory motivation." *Collins v. Amer. Red Cross*, 715 F.3d 994, 999 (7th Cir. 2013). Direct evidence is evidence that, "'if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption.'" *Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012) (quoting *Eiland v. Trinity Hosp.*, 150 F.3d 747, 751 (7th Cir. 1998)). Direct evidence of discrimination under Title VII "is something close to an explicit admission by the employer." *Diaz v. Kraft Foods Global, Inc.*, 653 F.3d 582, 587 (7th Cir. 2011). Short of that though a plaintiff can still succeed on the basis of circumstantial evidence under the direct method by "construct[ing] a convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker." *Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1105 (7th Cir. 2012) (internal quotation marks omitted). The evidence that makes up the "mosaic" generally falls into three categories: 1) evidence that suggests suspicious timing and statements; 2) evidence that "similarly situated employees were treated differently"; and 3) "evidence that the employer offered a pretextual reason for an adverse employment action." *Cloe v. City of Indianapolis,* 712 F.3d 1171, 1180 (7th Cir. 2013) (internal quotation marks omitted). Whatever the sort of circumstantial evidence offered to prove discrimination, such evidence "must point directly to a discriminatory reason for the employer's action." *Rhodes v. Ill. Dept. of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004).

Plaintiff claims she has produced evidence of suspicious timing in regard to Defendants expressing their support for her, yet abruptly changing course one year

later and becoming hostile to her. (Doc. 179 at 79-82). Plaintiff misconstrues the purpose of presenting evidence of suspicious timing. Suspicious timing evidence is relevant where temporal proximity is material to the claim, such as when statutorily protected activity occurs within such proximity to the adverse employment action that it is plausible the adverse action was taken in retaliation for that activity. *E.g.*, *Harper v. C.R. England, Inc.*, 687 F.3d 297, 308 (7th Cir. 2012). Another example is where a woman is fired or passed up for a promotion after the employer learns of her pregnancy. *E.g.*, *Geier v. Medtronic, Inc.*, 99 F.3d 238, 241 (7th Cir. 1996).

Plaintiff argues that the timing of Fieldcrest's' complaints about her performance coincide with Doug Roberts' announcement that he would leave Fieldcrest unless he obtained a position that would allow him to spend more time at home. But the evidence is already crystal clear that Plaintiff was not extended or renewed, at least partially, because Defendants wanted Doug Roberts to be the full-time principal of Fieldcrest South. The relevant inquiry is not whether Fieldcrest failed to keep Plaintiff, an employee they apparently did not like, because they liked Doug Roberts more. The relevant inquiry is whether they liked Doug Roberts more because he was a man; or conversely, did they dislike Plaintiff because she was a woman. Plaintiff's evidence of suspicious timing does not bear on these latter inquiries and is consequently of little use.

Next, Plaintiff presents evidence she contends demonstrates that Fieldcrest's male principals were systematically treated better than her. For this prong of the analysis, the plaintiff must demonstrate that the purported comparators are

"directly comparable to [the plaintiff] in all material respects." *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 810 (7th Cir. 2011).

Plaintiff points out that DeMay, principal of Fieldcrest West, was going to be fired for cause in October 2011, yet Fieldcrest put him on paid administrative leave throughout the end of the calendar year. Fieldcrest allowed DeMay to resign and be paid out sick days for about $17,000. Fieldcrest Board President Kilpatrick stated in a deposition that they did not want DeMay to undergo the embarrassment of being fired. Plaintiff cites a single line from a closed-door meeting where Kilpatrick said it would be devastating for everyone should DeMay not be allowed to go out the way the Board thought was appropriate.

The Court fails to see how this evidence is relevant to Plaintiff. First, DeMay had been the principal of Fieldcrest West for seven years prior to 2011, thus he had seniority and familiarity with the Board that the Plaintiff lacked. Fieldcrest was contemplating actually forcing him out of his job while his contract was still in effect because of the serious nature of his infraction. Nothing in the record shows that Fieldcrest was going to fire Plaintiff or terminate her contract prematurely and deny her a chance to save face. If anything, the evidence shows Fieldcrest wanted Plaintiff out sometime within her second year and began giving her months in advance of her contract expiring to search for other work rather than trying to remove her prematurely. Second, given the nature of DeMay's offenses, Fieldcrest had a legitimate interest in allowing him to exit as quietly and smoothly as possible

to protect the integrity of the Fieldcrest school community and its image.[1] Plaintiff's relationship with the teachers at Fieldcrest South did not carry the same implications to the Fieldcrest Board as DeMay's infraction did.[2]

Next, Plaintiff points out that Roberts was given a full-time principal position at Fieldcrest South without having to interview for it, while Plaintiff was not allowed to interview for the vacancy created by Roberts' move. Roberts had been a principal of Fieldcrest East for four years before being hired as the new full-time principal of Fieldcrest South. There is no indication in the record that Plaintiff had ever worked for Fieldcrest or was otherwise known to Fieldcrest when she applied there. Thus, Roberts and Plaintiff are not comparable on this issue. Having had four years to observe Roberts, Fieldcrest would have little need to interview him as the Board was already familiar with him and his ability. Furthermore, one of the reasons Plaintiff was not renewed was for the express purpose to make room for Roberts as the full-time principal of Fieldcrest South so he would not leave Fieldcrest. It would be a wholly unnecessary exercise to interview one for a position that was already secured for that person. Lastly, Fieldcrest decision-makers had already concluded they did not want to deal with Plaintiff once her contract ran out, so they had no need to allow her to interview for a different position.

Next, Plaintiff complains that Roberts was told by Vincent that if he were seriously looking to leave for a job based on financial considerations he should come

---

[1] The Court will not expound on the details of the infraction due to confidentiality concerns.

[2] Incidentally, that the Board took an adverse employment action against DeMay for his conduct demonstrates they were not limited to taking such adverse employment actions against principals on the sole basis of student academic performance as Plaintiff contends.

and talk to Vincent before doing so. Fieldcrest would not even negotiate Plaintiff's salary and benefits under her contract. Again, the context of this evidence demonstrates why it is not a situation that was comparable between Plaintiff and Roberts. The Board liked Roberts. Board members thought he was doing an excellent job. The Board did not like Plaintiff; whom they thought was doing a poor job managing the principal-teacher relationship at Fieldcrest South. The Board wanted to keep Roberts, so it was willing to work with him to keep him because the Board knew Roberts was interviewing for other jobs. (Doc. 179 at 55). Plaintiff never expressed to the Board that she was considering leaving, so the Board was never put in a position to consider what it would do to retain her if she were seriously considering leaving.

Next, Plaintiff presents evidence that Lapp, the Fieldcrest High principal, received raises and contract extensions despite failing to meet academic progress targets. The Court finds that this evidence is again not relevant because the Board never expressed an unwillingness to renew/extend or rollover Plaintiff's contract based upon any purported failure to meet academic progress targets. The only reasons offered by Fieldcrest for their decision not to extend/renew/ or rollover Plaintiff's contract is that she was not getting along with the teachers at Fieldcrest South and they wanted to keep Doug Roberts happy. Plaintiff continuously props up the red herring that the Board was only allowed to consider performance goals under the contract in its decision on whether to keep Plaintiff, but that is not what the contract states. The contract merely sets academic performance as something the principal must strive to achieve.

The strongest piece of circumstantial evidence in favor of the Plaintiff was Vincent's alleged statement that school boards prefer men. The Court finds that Vincent wielded sufficient power and influence as the superintendent such that the comment cannot be ignored as a mere stray remark. Of course, Vincent recommended Plaintiff for the job in the first place over a qualified male candidate. But again, it is not the duty of the Court to weigh competing evidence, but rather to discern whether any relevant evidence of a genuine issue of material fact exists. *Waldridge*, 24 F.3d at 920. Even though this comment came well after Vincent had already expressed his, and possibly the Board's, desire to not extend Plaintiff beyond her contract, it still has relevance as to the motivation to replace Plaintiff with Roberts. That Vincent and Plaintiff dispute the context of the statement, and now seem to dispute whether the statement actually was ever made, does not mean the Court can ignore it. In sum, while the Court finds that the evidence of timing and so-called preferential treatment of the male principals is insufficient, the comment that "school boards prefer men" when coupled with the clear intention to appease Roberts at the expense of Plaintiff is enough to proceed to a jury on Plaintiff's Title VII contract renewal claim under the direct method.

For the indirect method, courts apply the requirements set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Collins*, 715 F.3d at 999. This indirect burden-shifting method requires that a plaintiff first establish "a prima facie case of . . . discrimination with evidence that (1) she is a member of the protected class; (2) she met her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees

outside of the protected class were treated more favorably." *Naficy v. Ill. Dep't of Human Servs.*, 697 F.3d 504, 511 (7th Cir. 2012). If the plaintiff succeeds in establishing a *prima facie* discrimination case, a rebuttable presumption of discrimination arises, *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012), and "the burden shifts to the employer 'to introduce a legitimate, nondiscriminatory reason for the employment action.'" *Perez*, 731 F.3d at 704 (quoting *Naficy*, 697 F.3d at 511). If the employer meets the burden, the plaintiff must then provide evidence that the "employer's stated reason was pretextual." *Id.* (citing *Naficy*, 697 F.3d at 511-12).

Plaintiff, a woman, is a member of a protected class under Title VII and she suffered an adverse employment action by not being renewed or extended as the principal of Fieldcrest South. As discussed above, the Court finds that Plaintiff was not similarly situated to the male employees. Therefore, the Court finds Plaintiff may not proceed to the jury under the indirect method.

Since Plaintiff can make out a *prima facie* claim for gender discrimination under the direct method, the Court will now consider Fieldcrest's legitimate non-discriminatory reason for its decision not to renew/extend or roll over Plaintiff's contract. *See McCarthy v. Kemper Life Ins. Cos.*, 924 F.2d 683, 686 (7th Cir. 1991). Fieldcrest states that its legitimate non-discriminatory reason ("LNR") for not extending or renewing Plaintiff's contract is that she had a tumultuous relationship with the teachers at Fieldcrest South and Doug Roberts had proven himself to be an excellent principal whom the Board wanted to keep in Fieldcrest. Although there is also evidence Plaintiff was not meeting Fieldcrest's expectations, there is evidence

that Plaintiff was performing her position satisfactorily, which renders summary judgment for Fieldcrest inappropriate for this claim.

For instance, on one hand there is evidence that Fieldcrest thought Plaintiff's performance during her first year was excellent. Moreover, there is evidence Plaintiff's students were achieving academic performance scores higher than students of the other schools in the District. On the other hand, Fieldcrest points to evidence that the teachers at Fieldcrest South did not get along with Plaintiff and there were severe negative morale issues. Plaintiff labels this evidence as inadmissible hearsay yet offers no explanation for her assertions. Fieldcrest responds that the evidence is not hearsay but rather information being asserted for notice on Fieldcrest; not for the truth of the matter asserted within the statements. The Court agrees with Fieldcrest.

"Hearsay" is a statement made out of court and offered into evidence to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801(c). Out-of-court statements presented for other purposes are not hearsay. *E.g.*, *United States v. Rettenberger,* 344 F.3d 702, 707 (7th Cir. 2003); *see also Fenje v. Feld*, 301 F. Supp. 2d 781, 811 (N.D. Ill. 2003) aff'd, 398 F.3d 620 (7th Cir. 2005) (collecting cases and listing several non-hearsay purposes such as "[s]tatements intended to show, for example, the speaker's state of mind, . . . and notices or knowledge of a party." (citations omitted)). In *Fenje*, the court explained that "[i]t is not hearsay for defendant or other University officials to state that they made a decision based on information reported to them. While the statements reporting such information generally will be hearsay not admissible to show the truth of the reported

information, the statements are not inadmissible hearsay for purposes of showing the information relied upon or considered in making a decision." 301 F. Supp. 2d at 811 (citations omitted). Fieldcrest here is attempting to use the evidence in question for the same purpose identified in *Fenje*, not to prove the truth of the matter asserted within the documents, but rather for the non-hearsay purposes of showing what information it relied upon or considered in making a decision regarding Plaintiff. In short, the evidence is admissible and creates a genuine issue of fact.

Fieldcrest characterizes its LNR as indisputable and claims that Plaintiff cannot show that its LNR is pretext for gender discrimination. (Doc. 170 at 22-3). However, as Plaintiff has shown, there is evidence to dispute and to disbelieve Fieldcrest's LNR. A pretext is defined as "a lie, specifically a phony reason for some action." *Collins*, 715 F.3d at 1000 (internal quotation marks omitted). The relevant question is whether the justification for the adverse employment action was honest, not whether the justification is "inaccurate or unfair." *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011). To meet the burden of showing that Defendant's reason was pretextual, Plaintiff must "identify such weaknesses, implausibilities, inconsistencies, or contradictions in [the] . . . proffered reasons that a reasonable person could find them unworthy of credence." *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007).

Plaintiff argues that the alleged staff problems at Fieldcrest South were pretext for removing her to accommodate a male. She points out several weaknesses and discrepancies in Fieldcrest's LNR including that then superintendent Vincent had rejected the very same evidence—a climate study—Defendants now seek to

utilize against her; that there are no documented staff complaints about Plaintiff; and that Plaintiff's attempts to identify and correct alleged problems were rebuffed by Defendants. Moreover, there are no affidavits, deposition testimony, or declarations from any of the teachers at Fieldcrest South that speak to a poor relationship between Plaintiff and her staff. Defendants have produced a single email that speaks to problems between Plaintiff and her staff, but Plaintiff has produced evidence that her students were performing exceptionally well despite whatever morale issues existed between Plaintiff and her staff.

In the recent Seventh Circuit case, the court reaffirmed that "unfair and unjustified ill-treatment can be a pretext for discrimination when the employer treats an employee unfairly because the employee belongs to a protected category" and that "[a]n employee can demonstrate that the employer's reasons are not credible through evidence showing that the proffered reasons had no basis in fact, were insufficient to motivate discharge, or did not actually motivate his discharge." *Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 464-65 (7th Cir. 2014). The Court does not agree with Plaintiff that academic progress was the sole criteria on which Fieldcrest could base its employment decisions regarding principals but it is beyond argument that academic progress is an important indicator of a principal's worth. As explained in *Widmar*, poor management decisions can be a cover for illegal discrimination in certain instances. It seems that jettisoning a female principal who was achieving relatively greater academic success than her male peers while saddled with a supposedly acrimonious, even mutinous, staff would be such an instance. In any event, it is the fact-finding jury who should decide the veracity of

the LNR when a plaintiff has produced some evidence that the LNR is false or simply not credible under the circumstances.

Based upon the evidence presented thus far, the Court cannot find that there is no factual basis from which to conclude the Plaintiff is incapable of demonstrating that Fieldcrest's stated LNR is not pretext. Summary judgment for Fieldcrest is denied on the Title VII renewal/extension claim.

**B.     Unequal Compensation**

As discussed above, a plaintiff may prove her claims in one of two ways: through either the "direct" or "indirect" methods of proof. *Collins*, 715 F.3d at 999; *see also Chaib v. Indiana*, 744 F.3d 974, 981 (7th Cir. 2014). Defendants argue that Plaintiff has not presented evidence such that a reasonable jury could find for her Title VII pay differential claim under either the direct or indirect methods of proof for the same reasons she cannot succeed on her EPA claim and because the pay differential between her and the male principals were based on non-discriminatory reasons. (Doc. 173-1).

Under the indirect method of proof, courts apply the requirements set forth in *McDonnell Douglas Corp.*, 411 U.S. 792. *Collins*, 715 F.3d at 999. This indirect burden-shifting method requires that a plaintiff first establish "a prima facie case of . . . discrimination with evidence that (1) she is a member of the protected class; (2) she met her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside of the protected class were treated more favorably." *Naficy*, 697 F.3d at 511.

The Court has already explained above that the Plaintiff did not satisfy her *prima facie* requirement that she was performing equal work as her proffered comparators in her EPA claim. For the same reasons that the three other Fieldcrest principals were not comparable to Plaintiff under the EPA claim framework, they are not similarly-situated to her under the Title VII framework in terms of pay equality. Moreover, all three male principals had seniority with Fieldcrest over Plaintiff and more experience as a principal when she began working as Fieldcrest South's principal in 2007. DeMay had been the principal of Fieldcrest West for four years before Plaintiff even began working at Fieldcrest South. Roberts had been the principal of Fieldcrest East for one year prior to Plaintiff's tenure at Fieldcrest South. While these factors are affirmative defenses to be proven by the defendant under the EPA's "strict-liability" type of framework; they are factors that can be considered under the similarly-situated employee prong of the Title VII framework. Having failed to produce evidence that satisfies the fourth prong of the *prima facie* requirement, Plaintiff's claim cannot proceed under the indirect method.

Under the direct method, Plaintiff fares no better. As discussed above, a plaintiff must provide either direct or circumstantial evidence that the employer had a discriminatory motivation." *Collins*, 715 F.3d at 999. Direct evidence is evidence that, "'if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption.'" *Hanners*, 674 F.3d at 691 (quoting *Eiland*, 150 F.3d at 751). Direct evidence of discrimination under Title VII "is something close to an explicit admission by the employer." *Diaz*, 653 F.3d at 587. To succeed on the basis of circumstantial evidence, the plaintiff must

"construct a convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker." *Brown*, 700 F.3d at 1105 (internal quotation marks omitted). The evidence that makes up the "mosaic" generally falls into three familiar categories of: 1) evidence that suggests suspicious timing and statements; 2) evidence that "similarly situated employees were treated differently"; and 3) "evidence that the employer offered a pretextual reason for an adverse employment action.", *Chloe*, 712 F.3d at 1180 (internal quotation marks omitted). Whatever the sort of circumstantial evidence offered to prove discrimination, such evidence "must point directly to a discriminatory reason for the employer's action." *Rhodes*, 359 F.3d at 504.

In her response brief, Plaintiff did not separately discuss the application of her circumstantial evidence to her Title VII pay differential and failure to renew or extend claims. The Court finds that none of the evidence discussed above in Section II. A. is sufficient to demonstrate that Fieldcrest intentionally discriminated against her on account of her sex in compensating her differently than it did their male principals. First, Vincent's comment about school boards preferring men occurred in year three of Plaintiff's contract, well after the principals' salaries for the given year would have been determined and, as Plaintiff herself explained, was made in relation to her explaining to Vincent that she did not want to leave Fieldcrest. (Docs. 168-13 at 34; 168-12 at 147). Second, evidence that in one year the male principals received a four percent raise, while Plaintiff received a one percent raise is not evidence that Fieldcrest was discriminating against Plaintiff on the basis of her sex; rather it is evidence that they really did not care for her and

wanted her to leave. In fact, Plaintiff herself has produced evidence—a transcript of a closed meeting of the Board—that plainly shows that was the Board's intent. (Doc. 179-8 at 1-2 ("I don't know what you, since we really kind of told [Plaintiff] we want her to move on, I don't think it would be sending the right message to give her anywhere near 4%. The question is should she get anything? . . . You know, a nominal increase would probably send the same message that we're still wanting her to find other employment if she can do that and its to her advantage to do so. And there's still summer enough left for her to continue to look for positions and that's what she's doing.")). Later on in the transcript, the meeting's participants discuss Plaintiff's shortcomings and discuss hearing positive feedback about two other principals. The record is silent on whether any male principals received raises when the Board had already identified them as having to leave the District's employment.

Similarly, that Vincent told Roberts to come and talk to him about more money before leaving to take a job outside of the district while refusing to negotiate Plaintiff's contract is not evidence that her compensation differential was attributable to her sex. As has already been discussed, there is ample evidence Vincent and the other Board members really liked Roberts and thought he was doing an excellent job and did not wish to lose him. Title VII does not prohibit employers from favoring one employee over another because of personal preferences or relationships or other non-discriminatory reasons, *see, e.g., Schobert v. Illinois Dep't of Transp.*, 304 F.3d 725, 733 (7th Cir. 2002); it prohibits employers from favoring one employee over another on the basis of their sex. Moreover, the record is

silent on whether Vincent and the Board ever negotiated salaries with the other principals. If anything, the documentary evidence provided by Plaintiff demonstrates the Board did not negotiate with any of the principals, but rather set raises as it deemed fit. (*See* Doc. 179-8)

In sum, the Court finds that the Plaintiff has not produced sufficient evidence to proceed on her intentional discrimination claim under Title VII with respect to her unequal pay or raises.

## C. State Law Employment Claims

Plaintiff has also filed state law claims that Fieldcrest violated the Illinois Human Rights Act, 775 ILCS 5/1 *et seq.* by paying Plaintiff substantially less in salary and benefits to male principals, by granting contract extensions or contract roll-overs to male principals but not to Plaintiff and in voting to not renew Sokn's contract of employment. (Doc. 114 at ¶104). Claims brought pursuant to the Illinois Human Rights Act, 775 ILCS 5/1 *et seq.* are analyzed under the same standards as federal claims brought under Title VII. *Illinois State Bd. of Elections v. Illinois Human Rights Comm'n*, 683 N.E.2d 1011, 1016 (Ill. App. Ct. 1997). As was discussed above, the Court interprets the actions of granting contract extensions or contract roll-overs to male principals but not to Plaintiff and voting to not renew Plaintiff's contract as the same claim. For the same reasons stated above in Sections II.A. and B., the Court denied summary judgment for Fieldcrest on Plaintiff's Title VII claim for failure to renew or extend her contract but granted summary judgment as to the unequal compensation claims. The Court therefore

denies and grants summary judgment for the identical state law claims predicated on the same facts as the Title VII claims.

### D. Retaliation

In her Fifth Amended Complaint, Plaintiff complained that she was not renewed or extended in retaliation for "her exercise of her right to report and seek remedy for sex discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3 (a)." (Doc. 114 at ¶102). Plaintiff has also brought a state law claim under the Illinois Whistleblower Act, 740 ILCS 174/1 *et. seq.* (Doc. 114 at ¶105). Fieldcrest has moved for summary judgment on the claim on the grounds that there is no causal link between the claimed protected activity and the failure to renew the contract. Fieldcrest claims Plaintiff engaged in the alleged protected activity well after then-superintendent Vincent had decided not to recommend that Plaintiff be renewed. Plaintiff has failed to respond to Fieldcrest's motion for summary judgment on her retaliation claims. Therefore, the Court deems that the Fieldcrest's argument on these two claims is conceded and the claims are denied. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (failing to respond to an argument results in waiver of the issue); CDIL-LR 7.1(D)(2) ("A failure to respond will be deemed an admission of the motion.").

## III. Section 1983

Plaintiff claims that each individual Defendant personally participated in the decisions to pay her "substantially less than male Principals, grant contract extensions to male Principals but not to Sokn, and voting to not renew Sokn's contract," and in so doing "have intentionally deprived Sokn of her liberty and

property contrary to her right to be free from sex discrimination by state actors guaranteed her by the Fourteenth Amendment of the United States Constitution right to equal protection of the laws and in violation of the Civil Rights Act of 1871, 42 U.S.C. §1983." Plaintiff discusses "equal protection of the laws" but also discusses the "deprivation of her liberty and property". Since Plaintiff seems to be making a due process claim, as well as an equal protection claim, the Court will discuss both.

There can be no due process claim for one who has no liberty or property interest at stake. *Webster v. Redmond*, 599 F.2d 793, 801-02 (7th Cir. 1979); *Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 574-76 (1972). In this case, Plaintiff cannot point to any source for a right to a raise or an extension, renewal or rehire under her contract, under Illinois law or under federal law. Therefore, to the extent her complaint contains a due process violation, it is denied.

As to her equal protection claim, the same standards for proving intentional discrimination apply to Title VII and § 1983 equal protection claims. *Davis v. Wisconsin Dep't of Corr.*, 445 F.3d 971, 976 (7th Cir. 2006). However, individuals may be sued in their individual capacities under Section 1983 claims. *Salas v. Wisconsin Dep't of Corr.*, 493 F.3d 913, 926 (7th Cir. 2007). Thus, for all the reasons her Title VII contract nonrenewal claim can proceed to the jury, her Section 1983 equal protection claim mirroring the Title VII contract nonrenewal claim may also proceed to the jury.

However, it is undisputed that individual Defendants Heidi Cook and Linda Reignier were not members of the Board in 2010 when it resolved to not renew

Plaintiff's contract. (Docs. 179 at 5; 172-19 at 3). Thus, they did not participate in the vote and have no relation to the surviving Title VII and Section 1983 failure to renew/extend/roll over claims. These claims against them are therefore denied.

Next, Defendants argue that they have legislative and qualified immunities that preclude their individual liability under Section 1983 for the existing equal protection claim.

Legislative immunity applies to protect public officials from liability for their legitimate legislative actions. *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998). "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Id*. The immunity extends to officials outside the legislative branch as long as the acts performed are legislative functions. *Id*. at 55. As the case cited by the Defendants recognized, "[t]he hiring, firing, or transferring of employees is traditionally an administrative function, not a legislative one, and administrative acts are not subject to legislative immunity. *Ring v. Bd. of Educ. Cmty. Sch. Dist. No. 60*, No. 03 C 7397, 2004 WL 1687009, at *4 (N.D. Ill. July 27, 2004). The Court finds the individual Defendants cannot shield their decision to not renew or extend the Plaintiff with legislative immunity. Deciding to not renew Plaintiff was a mere administrative action. While the decision came by way of a vote of the Board, that vote only concerned the performance of the Plaintiff; no policy was set, no rules were enacted, nothing from the decision impacted the public. In short, there was no legislative impact from the Board's employment decision, and no legislative immunity is available here.

Qualified immunity is similarly unavailable to the individual Defendants. Public officials are entitled to qualified immunity for their discretionary functions so long as their conduct does not violate clearly established statutory or constitutional rights. *Elwell v. Dobucki*, 224 F.3d 638, 640 (7th Cir. 2000). It is beyond dispute that the law prohibiting public employers from engaging in sex discrimination in violation of the equal protection clause of the Fourteenth Amendment is well established. *Tamayo v. Blagojevich,* 526 F.3d 1074, 1090 (7th Cir. 2008) ("the right to be free from sex discrimination is clearly established"); *see e.g.*, *Nanda v. Moss,* 412 F.3d 836, 844 (7th Cir.2005) ("It has been plain in this circuit for quite some time that arbitrary gender-based discrimination, including discrimination in an educational setting, violates the equal protection clause."). The individual Defendants are not entitled to qualified immunity.

Lastly, an official-capacity lawsuit is generally to be treated as a suit against the entity. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Since Fieldcrest, the entity, is participating in this lawsuit as a defendant, a Section 1983 claim against Randy Vincent for sex discrimination in violation of the equal protection clause in his official capacity is unnecessary as it is duplicative of the claim against Fieldcrest. It is therefore denied.

## IV.   Breach of Contract

Plaintiff had a written employment contract with Fieldcrest that set out the term, salary, duties and goals of her employment as a principal. (Doc. 168-2 at 1). The contract provided that her salary and benefits were to be negotiated in years two and three of the contract. (Doc. 168-2 at 1). The contract also had a provision

stating the "Board and superintendent collectively and individually shall refer promptly all criticisms, complaints and suggestions called to their attention to the principal for study and recommendation." (Doc. 168-2 at 2). The contract contained language that stated it was a performance-based contract linked to student achievement. There is no dispute that Plaintiff's contract was for a fixed term of three years with no provision whatsoever obligating Fieldcrest to rehire, extend or renew the contract. Nor has the Plaintiff pointed to some obligation on Fieldcrest, either through the understanding of the parties or arising in law, to renew or extend Plaintiff's contract. There is no evidence that Fieldcrest failed to pay Plaintiff the full amounts of her salary owed under the contract or attempted to rescind the contract or terminate her prematurely.

Plaintiff alleges that the Fieldcrest Board breached the contract with her by 1) "providing less in compensation, benefits, and contract extensions for [Plaintiff] than male administrators whose schools performed worse than [Plaintiff] on student performance and academic improvement standards, and in voting to not renew her contract on any basis other than those standards" (Doc. 114 at ¶106); 2) "failing to promptly refer all criticisms, complaints and suggestions called to the attention of the Board or the superintendent, preventing Plaintiff from knowing whether any of the allegations against her actually existed, who was making them, the basis of the allegations, and preventing her from having any legitimate opportunity to rectify any of the unknown complaints" (Doc. 114 at ¶107); and 3) failing to negotiate a salary and benefits amount with her. (Doc. 114 at ¶108).

In Illinois, the elements of a breach of contract claim are "(1) a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Timan v. Ourada*, 972 N.E.2d 744, 751 (Ill. App. Ct. 2012). Plaintiff moves for summary judgment on two grounds that 1) the Board failed to negotiate her salary and benefits as required under the contract and 2) the Board failed to assess Plaintiff on the basis of student achievement. (Doc. 168 at 16-17). Fieldcrest moves for summary judgment on all three of the breaches alleged in the operative complaint.

First, the Court finds that Fieldcrest is entitled to summary judgment on the claim that it failed to assess Plaintiff on the basis of student achievement. The Court has scrutinized the operative complaint and has not found this specific claim within it. While the Plaintiff has alleged that the Fieldcrest Board breached the contract in "providing less in compensation, benefits, and contract extensions for [Plaintiff] than male administrators whose schools performed worse than [Plaintiff] on student performance and academic improvement standards, and in voting to not renew her contract on any basis other than those standards" (Doc. 114 at ¶106), the claim that Plaintiff suffered harm from the failure to assess her on the basis of student achievement is not encompassed within the quoted language. Alternatively, summary judgment would still be appropriate for this claim since the contract at issue does not require the Board to assess Plaintiff on the basis of student achievement or academic progress. While the contract states it is linked to academic progress and student performance, nowhere in the document does it purport to require the Board to assess Plaintiff with these criteria. Instead, the contract

merely provides that academic progress and student performance are goals for which the principal must strive to meet during the term of the contract, not elements to satisfy to receive a new contract. (Doc. 168-2 at 1-2).

Second, the Court finds that Fieldcrest is entitled to summary judgment on the claim that it breached Plaintiff's contract by "providing less in compensation, benefits, and contract extensions for Sokn than male administrators whose schools performed worse than Sokn on student performance and academic improvement standards, and in voting to not renew her contract on any basis other than those standards." (Doc. 114 at ¶106). Nowhere in the contract is there a provision purporting to obligate Fieldcrest to provide Plaintiff with the same compensation and benefits provided to other principals or to renew her contract for any reason.

Third, the Court finds Fieldcrest is entitled to summary judgment on the claim that it breached the Plaintiff's contract by "failing to promptly refer all criticisms, complaints and suggestions called to the attention of the Board or the superintendent, preventing Plaintiff from knowing whether any of the allegations against her actually existed, who was making them, the basis of the allegations, and preventing her from having any legitimate opportunity to rectify any of the unknown complaints." (Doc. 114 at ¶107). There is a provision in the contract that uses the term "shall" when explaining that all criticisms, complaints and suggestions called to the attention of the Board or the superintendent are to be promptly communicated to Plaintiff. However, the Court finds a breach of this obligation is inconsequential because it did not result in an actual injury to Plaintiff. Illinois courts follow the doctrine of *de minimis non curat lex*, "which

means that courts will not regard trifles." *In re Krueger*, 192 F.3d 733, 741-42 (7th Cir. 1999) (quoting *Pacini v. Regopoulos*, 665 N.E.2d 493, 497 (Ill. App. Ct. 1st Dist. 1996). The doctrine operates to "place outside the scope of legal relief the sorts of intangible injuries normally small and invariably difficult to measure." *Pacini*, 665 N.E.2d 493 at 497 (1996) (quotation omitted).

Had Fieldcrest used criticisms, complaints and suggestions as reasons to take some action against Plaintiff within the context of the contract, she could probably claim an injury for the failure to forward such reasons to her in a timely fashion. For example, had Fieldcrest attempted to terminate Plaintiff before the contract's term expired or refused to pay her salary because of complaints, the failure to give her the criticisms, complaints and suggestions relied upon as the reason for such termination or withholding pay could be construed as an injury. Undoubtedly, Plaintiff feels that because Fieldcrest is now relying on complaints against her in defense of this lawsuit, the failure to promptly refer all complaints to her was injurious, but the Court finds that Plaintiff's inability to use the alleged complaints in subsequent legal proceedings cannot fairly be construed as the sort of injury contemplated by Plaintiff's employment contract.

Similarly the allegation that Defendants failed to negotiate compensation terms with Plaintiff cannot survive summary judgment. Plaintiff contends that no negotiations for increased salary and benefits under the contract took place. Defendants contend that Plaintiff was free to offer or counter-offer Defendants' raises but never did. Former superintendent Vincent admits Fieldcrest never negotiated with Plaintiff. The evidence clearly shows Fieldcrest picked a salary

increase not linked to performance for the third year in particular, which was unambiguously designed to make Plaintiff leave. The evidence on this issue is clear and definitive; there is no factual dispute here.

However, this "breach" is even less consequential than the Board's failure to forward criticisms to Plaintiff. Fieldcrest was only contractually bound to not decrease Plaintiff's salary, it was not bound to offer her an increase at all. Plaintiff has not presented any evidence she was estopped or prevented from requesting a higher raise when she was apprised that she would be given a 1% raise or at any time before.

In conclusion, Plaintiff's motion for summary judgment is denied on the issue of liability for breach of contract for failure to negotiate. Defendants' motion for summary judgment is granted on all breach of contract claims. Obviously, any and all breach of contract claims against the individual members of the Board are denied as none of the individual Defendants were a party to the employment contract between Plaintiff and Fieldcrest.

## V.  Violation of the Illinois Open Meetings Act

Defendants move for summary judgment on Plaintiff's Open Meetings Act ("OMA") violation claim (as well as defend against Plaintiff's motion) on the ground that it is time-barred. Defendants put the issue of the futility of Plaintiff's claim due to the statute of limitations before the Magistrate Judge in an attempt to explain why allowing Plaintiff to amend her complaint would be futile. (Doc. 98 at 4-5). On October 18, 2013, a Report and Recommendation was entered where the Magistrate Judge rejected the same argument Defendants advance here. (Doc. 112 at 8.)

The R & R states:

> Defendant asserts that any claim for violation of the OMA is time barred, because Plaintiff's motion for sanctions was filed more than 60 days after the meetings that were reflected in the allegedly destroyed tapes. . . . In the case now before this court, the alleged violation of the OMA did not occur at the meetings themselves (which took place in November and December of 2008, March of 2009, and April of 2010) but rather when the tapes were destroyed. . . . Plaintiff learned of the destruction on June 21, 2013. This motion was filed on August 21, 2013, less than 60 days after that discovery. Such a claim is not, therefore time barred, as Defendants assert.

(Doc. 112 at 8). Thus, Defendants' argument that Plaintiff's OMA claim is time-barred was already expressly rejected. However, this Court has reviewed the docket and relevant case law and has determined that Plaintiff's OMA violation claim is indeed time-barred.

Although the parties addressed the statute of limitations for an OMA violation within the context of futility of amending the complaint with the Magistrate Judge, neither party brought highly relevant Illinois cases to the Magistrate Judge's attention. In the most relevant case, *Paxson v. Bd. of Educ. of Sch. Dist. No. 87, Cook Cnty., Ill.*, 658 N.E.2d 1309, 1317 (Ill. App. Ct. 1995), an Illinois appellate court held that any person other than the State's Attorney must file suit prior to or within forty-five days of the meeting alleged to be in violation of the Open Meetings Act, in order to satisfy the statutorily imposed time limit for actions brought pursuant to the Act. The OMA has since been amended to provide for a sixty day limitations period. The *Paxson* court explained that the discovery rule contained in subsection 3(a) of the OMA only inures to the benefit of the State's Attorney. *Id.* at 1316-17 (acknowledging that the court's ruling limits persons other

than the State's Attorney to a very short and definite period of time in which to bring a civil action but also explaining such persons have other avenues for redress such as notifying a State's Attorney "even after 45 days of the meeting and to request the State's Attorney to file suit ex relatione, or upon relation").

In another relevant case, an Illinois appellate court held that any person, and not only the State's Attorney, may bring an action within forty-five days of discovery by the State's Attorney of the violation and the limitations period does not begin to run until the State's Attorney discovers the violation. *Safanda v. Zoning Bd. of Appeals of City of Geneva*, 561 N.E.2d 412, 414 (Ill. App. Ct. 2d Dist. 1990).

The *Safanda* decision has been routinely ignored or rejected by other Illinois appellate cases while the *Paxson* decision has been followed. *See P & S Grain, LLC v. Williamson Cnty.*, 2014 IL App (5th) 130507-U, ¶ 24 (Ill. App. Ct. 5th District 2014); *Sangirardi v. Village of Stickney*, 793 N.E.2d 787, 797 (Ill. App. Ct. 1st Dist. 2003); *Chicago Sch. Reform Bd. of Trustees v. Martin*, 723 N.E.2d 731, 739-40 (Ill. App. Ct. 1st Dist. 1999). Federal courts considering the issue have also ignored *Safanda* and embraced *Paxson. Kyle v. Morton High Sch.*, 144 F.3d 448, 453 (7th Cir. 1998) ("Although there is a conflict among the districts of the Illinois Appellate Court regarding when a private party's challenge to the Open Meetings Act is timely, we are persuaded by the careful analysis of the issue in *Paxson*."); *Asllani v. Bd. of Educ. of City of Chicago*, 845 F. Supp. 1209, 1226 (N.D. Ill. 1993).

The OMA provides that a civil action can be brought by <u>any person</u> for noncompliance with <u>any</u> of the statute's provisions and that the court may grant

relief as it deems appropriate. 5 Ill. Comp. Stat. § 120/3 (West, Westlaw through P.A. 98-1128 of the 2014 Reg. Sess.). Such language leads the Court to opine that the Illinois legislature may not have intended for violators of the Act to be able to escape liability due to the fact that their violations did not occur until after the limitations period had already run. However, it is just as plausible that the drafters of the OMA did not intend to provide anyone except the State's Attorneys with the ability to reach violators whose violations of the OMA occurred outside of the limitations period by drafting subsection (a) of Section 3 as they did.

This Court will follow and apply the holding of *Paxson* and conclude the OMA claim here is time-barred. "[I]n the absence of prevailing authority from the state's highest court, federal courts ought to give great weight to the holdings of the state's intermediate appellate courts and ought to deviate from those holdings only when there are persuasive indications that the highest court of the state would decide the case differently from the decision of the intermediate appellate court." *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 637 (7th Cir. 2002). This Court finds there are no indications that it should not follow the great majority of the Illinois appellate courts on the issue of the OMA's statute of limitations. Consequently, the Court finds that Plaintiff's OMA claim is time-barred and therefore denied.

## VI. Spoliation

Plaintiff accuses Defendants of negligently spoiling evidence in this case by erasing audio recordings of closed-session school board meetings without a vote by the school board approving the destruction less than eighteen months after their

recording. Plaintiff contends that the audio recordings of these closed-session school board meetings were destroyed at a time when the instant suit was either on file, reasonably foreseeable, or when a reasonable person would have foreseen that the audio recordings were material to a potential civil suit. Defendants do not dispute that every audio recording of closed session board meetings held prior to January 2009 without a vote by the School Board approving their destruction. Plaintiff has no idea of when the erasure occurred and Defendants have all disclaimed any knowledge of when and how the tapes came to be erased.

Defendants contend that the spoliation claim is barred because of a one-year statute of limitations found in the Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 Ill. Comp. Stat § 10/8-101(through P.A. 98-1128 of the 2014 Reg. Sess.). (Doc. 173 at 34). This argument is without merit as the spoliation claim was made in an amended complaint filed mere days after the discovery of the erasure of the audiotapes. Unlike under the OMA, where the discovery rule is written into the statute itself and only applies to the States' Attorneys; the common law negligent spoliation claim is subject to a general common law discovery rule that postpones the starting of a limitations period until the injured party knows or should have known of the injury. *See Schusse v. Pace Suburban Bus Div. of Reg'l Transp. Auth.*, 779 N.E.2d 259, 267-68 (Ill. App. Ct. 1st Dist. 2002); *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 89 (Ill. 2003) (In Illinois, the discovery rule is an equitable exception to an applicable statute of limitations that delays the running of an applicable limitations period until the point in time when a party seeking relief either learns of or reasonably should have known of an injury.)

A plaintiff can survive summary judgment on a spoliation claim in Illinois if she presents evidence that 1) the defendant owed her a duty to preserve the evidence; 2) the defendant breached that duty by losing or destroying the evidence; 3) such spoliation proximately caused the plaintiff to be unable to prove the underlying lawsuit; and 4) the plaintiff suffered real damages. *Martin v. Keeley & Sons, Inc.*, 2012 IL 113270, ¶ 26, 979 N.E.2d 22, 27 (Ill. 2012); *Boyd v. Travelers Ins. Co.*, 652 N.E.2d 267, 270 (Ill. 1995).

Defendants owed Plaintiff a duty to preserve the audiotaped recordings. That duty does not emanate from the OMA or the Board's voluntary policy, but rather from Defendants' common law duty to preserve evidence in impending litigation. "A defendant owes a duty of due care to preserve evidence if a reasonable person in the defendant's position should have foreseen that the evidence was material to a potential civil action." *Dardeen v. Kuehling*, 821 N.E.2d 227, 231 (Ill. 2004) (citing *Boyd*, 652 N.E.2d at 271). That is the only duty at issue in this claim. This duty arose on March 24, 2010, the date Plaintiff communicated via a letter the Defendants admit they received, that she was the victim of disparate treatment on the basis of her gender. At that point, Defendants had reasonable notice that a sex discrimination lawsuit brought by Plaintiff was possible and their duty to Plaintiff to preserve evidence relevant to this action was triggered. (Doc. 95 at 13). The Plaintiff has not offered any evidence that the audio recordings were erased on or after March 24, 2010. Thus, this case presents an interesting situation where there is no question Defendants erased the evidence, but there is no evidence presented that they did so in relation to or because of Plaintiff's potential lawsuit. Therefore,

the Court must find that Plaintiff has not presented evidence that Defendants breached a duty to preserve evidence in this matter. *Martin*, 2012 IL 113270, ¶ 46, 979 N.E.2d 22, 31-32 (noting the difficulties faced by plaintiffs and counter-claimants in gathering evidence of spoliation but nonetheless holding that they "bear the burden of establishing all elements of their spoliation claims").

Even if Plaintiff had evidence that Defendants breached their duty to Plaintiff to preserve evidence relevant to this case, Plaintiff has not addressed the other elements of a successful spoliation claim in her briefing. For example, Plaintiff is silent on how the erasure of the tapes prevents her from proving her Title VII and Section 1983 remaining claims. Given that the Court has found there is enough circumstantial evidence to proceed to the jury on those claims, Plaintiff would be hard pressed to satisfy this element of the spoliation claim. Plaintiff's spoliation claim therefore denied.

Plaintiff has moved for leave to submit a jury instruction that requests an adverse inference against Defendants for the spoliation of evidence. That motion is granted and the request is deemed submitted. However, at this stage of the litigation there has not been a sufficient evidentiary showing that the Plaintiff is actually entitled to such an instruction. So, to the extent Plaintiff's motion (Doc. 167) requests that the proposed instruction be given, such request is denied at this time. The Court may reconsider the issue upon a sufficient evidentiary showing at trial.

## VII.    Violation of 105 Ill. Comp. Stat. 5/24A-15

Plaintiff claims the Illinois School Code, 105 ILCS 5/24A-15 (through P.A. 98-1130 of the 2014 Reg. Sess.) requires a principal to be given a written evaluation by February 1 of the final year of such principal's multi-year contract. She alleges former superintendent Vincent gave Plaintiff her evaluation for the final year of her contract on February 26, 2010. (Doc. 114 at 18). Plaintiff ignores that on January 15, 2010, the Illinois School Code was effectively amended to require a Principal to give a written evaluation by March 1 of the final year of the Principal's multi-year contract. Plaintiff has not addressed the issue in its response brief. Since Plaintiff concedes she received her evaluation for the final year of her contract on February 26, 2010, summary judgment on this claim must be granted to Fieldcrest.

## VIII.  Motion to Strike

Plaintiff's motion to strike the affidavits of Randy Vincent is denied as moot. First, the information provided in the affidavits concerning the Equal Pay Act was not relied on by this Court in reaching the conclusion that the several schools differed in working conditions enough and the employment contracts differed substantially such that the Plaintiff and the other principals were not performing equal work as principals. Second, Vincent's testimony that he never said school boards prefer men is meaningless in the context of summary judgment. Plaintiff testified at her deposition that he said it and the Court is not going to weigh one witness's testimony against that of another. For purposes of disposing of the summary judgment motions, it is enough to proceed to jury that one witness, albeit

the complaining witness, has provided evidentiary support for a trier of fact to find a nexus between her sex and the unambiguous disfavor in which she was held by the Fieldcrest Board in relation to Doug Roberts.

<h3 align="center">CONCLUSION</h3>

IT IS THEREFORE ORDERED, Plaintiff's Motion for Summary Judgment (Doc. 168) is DENIED and Defendants' Motion for Summary Judgment (Doc. 170) is GRANTED in part and DENIED in part. Plaintiff's Motion for Leave to Submit a Proposed Jury Instruction (Doc. 167) is GRANTED but the Court will not allow such instruction at this time based on the evidence in the record at this time. Plaintiff's Motion to Strike Re: Randy Vincent Affidavits (Doc. 188) is DENIED. Given the manner in which the current iteration of the operative complaint is drafted, it is worth restating the status of the claims.

- Plaintiff's Equal Pay Act claim is DENIED.

- Plaintiff's Title VII claim based upon the failure to provide equal compensation is DENIED.

- Plaintiff's Title VII and Illinois Human Rights Act claims against Fieldcrest Community Unit School District No. 8 for failure to renew/extend/ roll over contract based on sex discrimination REMAIN.

- Plaintiff's Section 1983 claims based upon the failure to provide equal compensation are DENIED.

- Plaintiff's Section 1983 claims based upon the failure to renew/extend/ roll over contract based on sex discrimination REMAIN. However, the claims against Linda Reignier and Heidi Cook are DENIED. Plaintiff's Section 1983 claim against Randy Vincent in his official capacity is DENIED.

- Plaintiff's retaliation claims under Title VII and the Illinois Whistleblower Act, 740 ILCS 174/1 *et. seq.* are deemed waived and therefore DENIED.

- Plaintiff's breach of contract claims are DENIED.

- Plaintiff's Illinois Open Meetings Act claim is DENIED.

- Plaintiff's spoliation claim is DENIED.

- Plaintiff's claim of violation of the Illinois School Code, 105 ILCS 5/24A-15, is DENIED.

So ORDERED.

Entered this 12th day of January, 2015.


_____
 s/ Joe B. McDade
JOE BILLY McDADE
United States Senior District Judge
