# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| DORRENE SOKN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.   10-cv-1122 |
| | ) | |
| FIELDCREST COMMUNITY UNIT | ) | |
| SCHOOL DISTRICT NO. 8, an Illinois | ) | |
| Local Governmental Entity, RANDY | ) | |
| VINCENT, Superintendent, in his | ) | |
| individual and official capacities, JOE | ) | |
| KIRKPATRICK, President of the Board of | ) | |
| Education, in his individual capacity, | ) | |
| THOMAS BARTH, Vice President of the | ) | |
| Board of Education, in his individual | ) | |
| capacity, TAMMI COONS, Secretary of | ) | |
| the Board of Education, in her individual | ) | |
| capacity, SCOTT HILLENBURG, | ) | |
| Member of the Board of Education, in his | ) | |
| individual capacity, GREG | ) | |
| KROESCHEN, Member of the Board of | ) | |
| Education, in his individual capacity, | ) | |
| TIM MCNAMARA, Member of the Board | ) | |
| of Education, in his individual capacity, | ) | |
| and DANIELLE REICHMAN, Member of | ) | |
| the Board of Education, in her individual | ) | |
| capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## O P I N I O N  &  O R D E R

On January 12, 2015, this Court issued an Opinion and Order ruling on

several then pending motions in this matter. The Opinion and Order disposed of

several of Plaintiff's claims and left for trial certain Title VII, Illinois Human Rights

Act and Section 1983 claims against Fieldcrest Community Unit School District No.

8 and several individual Defendants for failure to renew/extend/ roll over an employment contract based on sex discrimination. Plaintiff takes issue with several of the Court's factual and legal conclusions, most notably the Court's dismissal of Plaintiff's Equal Pay Act claim, her spoliation of evidence claim and her breach of contract claims. Plaintiff has moved for reconsideration pursuant to Federal Rules of Civil Procedure 59 and 60 and requested oral argument on her motion.

## LEGAL STANDARDS

There is no actual motion to reconsider contemplated by the Federal Rules of Civil Procedure. Despite that, Federal Rules of Civil Procedure 59 and 60 allow judgments to be modified and, in some cases, vacated when necessary. A motion to alter or amend judgment pursuant to Rule 59(e) may only be granted if a movant clearly establishes that the court made a manifest error of law or fact, or presents newly discovered evidence. *Sigsworth v. City of Aurora, Ill.*, 487 F.3d 506, 512 (7th Cir. 2007) (citing *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995)). "However, it is well-settled that a Rule 59(e) motion is not properly utilized 'to advance arguments or theories that could and should have been made before the district court rendered a judgment.'" *Id.* (quoting *LB Credit Corp.*, 49 F.3d at 1267). Rule 60(b) allows a party relief from a final judgment or order for a number of reasons and Rule 60(a) allows a court to correct clerical mistakes or mistakes resulting from oversight or omission in a judgment, order, or other part of the record. In this case, Rule 60(b) does not apply because the January 12, 2015 Opinion & Order was not a final judgment. *See* Fed. R. Civ. P. 54(b); Fed. R. Civ. P. 60, Advisory Committee Notes, 1946 Amendment ("The addition of the qualifying

word 'final' emphasizes the character of the judgments, orders or proceedings from which Rule 60(b) affords relief; and hence interlocutory judgments are not brought within the restrictions of the rule. . ."); *Lowe v. McGraw-Hill Companies, Inc.*, 361 F.3d 335, 343 (7th Cir. 2004). The substance of Plaintiff's contentions make clear that she is seeking relief under Rule 59(e) rather than complaining of mere clerical mistakes under Rule 60(a). Thus, the standards of Rule 59(e) will be applied to the motion *sub judice*.

## BACKGROUND

The factual background of this case has been sufficiently laid out in the Opinion and Order dated January 12, 2015 (Doc. 190) and need not be repeated here.

## DISCUSSION

### I. Equal Pay Act

Plaintiff asserts that the Court's decision to deny her Equal Pay Act claim was wrong because it rested on incorrect factual conclusions and ignored applicable law. Plaintiff contends that the Court found that Plaintiff taught special education courses in the final year of her contract, but she did not. Plaintiff also contends that Doug Roberts performed RTI interventions at Fieldcrest South once he was installed as the principal there and previously at Fieldcrest East, thus he engaged in teaching. Next, Plaintiff contends the Court ignored that Doug Roberts took over the principal position at Fieldcrest South, once Plaintiff vacated it, for nearly 20% more to perform the same responsibilities and duties in the same building as Plaintiff had done.

Plaintiff is ignoring what the Court's decision actually relied upon. There is no dispute that—unlike the three male principals—Plaintiff had a clause negotiated into her contract carving out up to fifty percent of her assignment to teach as a teacher, not administrate as a principal. Whether or not Plaintiff taught in the third year of her contract has no impact on the fact that the teaching exception and her pay were already determined by her contract. Plaintiff does not address this glaring difference between her and the other Fieldcrest principals.

Further, the Plaintiff's fixation with what Doug Roberts did with RTI interventions and her reliance on *Patkus v. Sangamon-Cass Consortium*, 769 F.2d 1251 (7th Cir. 1985) are misplaced. *Patkus* instructs that the "salary paid to a successor who performs substantially the same work *may* provide a basis for an equal pay action." *Id.* at 1260 (emphasis added). Again, Plaintiff's pay was negotiated and determined by a contract. Her contract contained a different provision than her male counterparts' contracts, including the contract of Doug Roberts. (*See* Docs 168-2,4,5, and 6). Each of the employment contracts Plaintiff submitted for this Court's review contained a duties section and only Plaintiff's contract contained the teaching carveout within that section. There was never any allegation presented to this Court that Doug Roberts had a teaching carveout in his contract; either before or after he went to Fieldcrest South. This point alone creates a substantial dissimilarity between Plaintiff and her potential comparators, including Roberts.[1] Thus, the *Patkus* case and Doug Roberts' RTI intervention

---

[1] Plaintiff has never argued that the reason her contract differed from the other principals' contracts was because she is a woman and they are men.

teaching[2] do not establish a basis for the Court to reverse its decision on the Equal Pay Act claim.

Plaintiff also asserts that the Court erred in finding the principals' schools differed in size of student populations. First, the Court did not find all the Fieldcrest schools differed in the number of students. The Court specifically referred to the difference in the number of students of Fieldcrest High and Fieldcrest South as a reason to eliminate the principal of Fieldcrest High as a comparator to Plaintiff, the principal of Fieldcrest South. (Doc. 190 at 12). As for the other schools, the Court noted the differences between the ages and grades of instruction of the student populations; not their numbers under the precedent of *Nuzzi v. Bourbonnais Elementary Sch. Dist.*, 360 F. App'x 664, 666 (7th Cir. 2010). (Doc. 190 at 12). Plaintiff does not address this distinction. Nor does the Plaintiff address the Court's proper reliance on *Sims-Fingers v. City of Indianapolis*, 493 F.3d 768 (7th Cir. 2007), in concluding the principals at issue in this case were working in heterogeneous schools with different student bodies and different staff. Instead, Plaintiff complains that the Court substituted its own opinion over a factual statement of Randy Vincent. It did not. The Court accepted uncontested specific documentary evidence of the size of the high school student population relative to the student population of Fieldcrest South over a general statement of Randy Vincent that unspecified schools in Fieldcrest were similar in size. Doing so did not constitute error, let alone manifest error.

---

[2] At one point in her brief Plaintiff refers to the RTI interventions as administrative in nature, not examples of teaching. (Doc. 191 at 5).

Next, Plaintiff takes issue with the Court accepting as fact that Doug Roberts and Jim DeMay had district-wide responsibilities that she did not. Remarkably, Plaintiff never disputed (and still does not dispute) that DeMay and Roberts actually had district-wide responsibilities for curriculum development and a free lunch program, respectively. Instead, as to DeMay, Plaintiff disputed the Defendants' assertion on the basis that DeMay was the principal of Fieldcrest East, not that he did not have district-wide responsibility for curriculum development. (Doc. 179 at 14).

As to Doug Roberts, the Plaintiff is correct that the Court came across the factual assertion that Doug Roberts had the district-wide responsibility of supervising Fieldcrest's Free and Reduced Lunch Program from the affidavit of Randy Vincent. The Court should have recognized as such in its Order and Opinion. However, the Court did not commit manifest error in relying on that affidavit.

Again, Plaintiff does not argue that Roberts was not in charge of the lunch program. Instead, Plaintiff objects to this factual assertion on the basis that Vincent's affidavit is a "sham" because Vincent did not mention Robert's district-wide responsibility in his deposition.[3] Plaintiff also requested that the affidavit be stricken under the precedent of *Bank of Illinois v. Allied Signal Safety Restraint Systems*, 75 F.3d 1162, 1168-69 (7th Cir. 1996), which holds "that a party cannot create a genuine issue of material fact by submitting an affidavit containing

---

[3] Plaintiff referred to other grounds for striking the affidavits in her motion to strike (Doc. 188) that are not relevant to this particular point, so the Court will not discuss them here.

conclusory allegations which contradict plain admissions in prior deposition or otherwise sworn testimony."

In *Bank of Illinois,* a litigant made numerous unsworn and sworn, out-of-court and in-court, statements that a minor accompanying him in an automobile had not been wearing a seat belt. *Id*. at 1164-65. Yet, in a much later deposition, and after the parties had altered their theory of liability, that same litigant testified that he did in fact believe the minor was wearing a seat belt. *Id*. at 1165-66. The court held that the litigant's subsequent deposition directly and unequivocally contradicted his earlier testimony and could not be relied upon because it created a sham issue of factual dispute. *Id*. at 1172.

Here, the transcripts referenced by Plaintiff reveal that Vincent's statements are not actual contradictions of earlier testimony. Plaintiff notes that in Vincent's deposition, the following back and forth occurred:

> Q: Now, Dorrie had less compensation than Doug did between <u>when she was the principal at South and he was</u>?
>
> R: You probably have more information than I do regarding that.
>
> Q: I do. And the answer is yes, isn't it?
>
> R: If that's what your information is, I'm not going to dispute it.
>
> Q: Yet she had all the same administrative responsibilities that Doug had <u>when he went there</u>?
>
> R: Yes.

(Doc. 168-15 at 25 (emphasis added)). Elsewhere, Vincent was asked: "Anything that Doug Roberts was <u>doing at his school</u> or Jim DeMay <u>at his</u> or Bill Lapp <u>at his</u>, Dorrie was responsible for all those <u>at South</u>?" Vincent responded: "Yes." (Doc. 168-

14 at 104 (emphasis added)). Thus, none of the deposition testimony cited by Plaintiff touches on the male principals' duties <u>outside</u> of their respective schools nor was Vincent ever asked to present an exhaustive list of Roberts's duties. An actual contradiction would exist under *Bank of Illinois*, for example, had Vincent been asked directly whether any of the male principals were tasked with any district-wide responsibilities and he responded negatively, yet later changed his testimony. In such a case his subsequent affidavit testimony could fairly be rejected under *Bank of Illinois*.

Regardless, Plaintiff still does not contend that Roberts and DeMay did not actually have district–wide duties that she did not. Instead, the Plaintiff argues the Court did not have a proper factual framework to decide *how much work* DeMay or Roberts performed for their respective district-wide responsibilities. First, Plaintiff was free to make these points in its briefing on the cross-motions for summary judgment, but did not. Therefore, this argument is not proper on this reconsideration motion. Rule 59(e) "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013) (citing *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000)).

Second, even assuming the Plaintiff is correct the Court had no basis to decide Roberts and DeMay had district-wide responsibilities that the Plaintiff did not and the Court removed it from its analysis—despite that Plaintiff has not

offered any <u>factual basis</u> to dispute such assertion and despite that Plaintiff acquiesced to the characterization of the fact that <u>all</u> the principals served on an RTI committee as part of their district-wide responsibilities as <u>undisputed</u> (Doc. 179 at 6)—the result would be the same. The Court's decision rests upon other findings of dissimilarity between Plaintiff and the other principals, including the substantial difference in contracts and the heterogeneity of the schools. Therefore, the Court concludes Plaintiff has not provided sufficient reason to modify its January 12, 2015 Opinion and Order and reinstate the Equal Pay Act claim.

## II. Spoliation

Plaintiff contends that the Court erred in ruling on her spoliation claim when it concluded that she had not presented any evidence that a duty to preserve the evidence in question had been breached. She claims this was not a ground upon which the Defendants moved for summary judgment, and therefore she was not obligated to address it and the Court should not have considered the issue. In support of her contentions, Plaintiff cites *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 765 (7th Cir. 2006), *Edwards v. Honeywell, Inc.*, 960 F.2d 673, 674 (7th Cir. 1992), and *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 736 (7th Cir. 2006); all of which support the general proposition that a court should not grant summary judgment on an issue that the non-movant did not address because the movant failed to raise it. There is an exception to this general rule though, which is "[a] district court may enter summary judgment sua sponte on an issue not explicitly argued if the losing party is on notice that she has to come forward with all of her evidence." *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1182 (7th Cir. 2013) (citing

*Kellar v. Summit Seating Inc.*, 664 F.3d 169, 174 (7th Cir. 2011)); *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) ("district courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence.').

Defendants made an array of arguments in their motion in support of denying the spoliation claim. First, they argued they were never under any duty to preserve the evidence at issue. (Doc 173 at 34). Then, they argued the spoliation claim was barred because of a one-year statute of limitations. (Doc. 173 at 35). Then they argued they were protected by the Illinois Tort Immunity Act, 745 Ill. Comp. Stat. §10/2-202. (Doc. 173 at 35). Lastly, they argued (albeit perfunctorily) that Plaintiff would not be able to show that the destruction of the evidence jeopardized her case. (Doc. 173 at 35).

A spoliation claim in Illinois requires a plaintiff to present evidence that 1) the defendant owed her a duty to preserve the evidence; 2) the defendant breached that duty by losing or destroying the evidence; 3) such spoliation proximately caused the plaintiff to be unable to prove the underlying lawsuit; and 4) the plaintiff suffered real damages. *Martin v. Keeley & Sons, Inc.*, 2012 IL 113270, ¶ 26, 979 N.E.2d 22, 27 (Ill. 2012); *Boyd v. Travelers Ins. Co.*, 652 N.E.2d 267, 270 (Ill. 1995).

Again, Defendants argued that Plaintiff would not be able to show that the destruction of the evidence jeopardized her case. (Doc. 173 at 35). Plaintiff did not address this argument and even concedes that she failed to do so. (Doc. 191 at 18-19). Thus, summary judgment was appropriate on that ground alone and the Court explained as much. (Doc. 190 at 44).

Furthermore, Plaintiff did have ample notice that she would have to produce evidence of when the destruction of the evidence occurred in order to survive summary judgment. Strangely enough, Plaintiff concedes she was aware of the facts that should have alerted her to her duty to present her evidence on when the evidence was destroyed in these summary judgment proceedings. Her motion provides: "Spoliation is a <u>simple negligence</u> claim. . . ." "Plaintiff does not need to prove the date the records were destroyed; she <u>needs to convince the jury</u>, by a preponderance of the evidence, that <u>they were destroyed **when** the Defendants had a duty not to destroy them</u>." (Doc. 191 at 19 (emphasis added)).

Defendants explicitly moved for summary judgment on the basis that as public employees, they were protected by the Illinois Tort Immunity Act, 745 Ill. Comp. Stat. §10/2-202. That statute is technically called the Illinois Local Governmental and Governmental Employees Tort Immunity Act. It provides that local public employees (and by extension, their employing public entities due to 745 Ill. Comp. Stat. §10/2-109) are protected from liability for any acts or omissions undertaken in the execution or enforcement of any law unless such act or omission constitutes <u>willful and wanton conduct</u>. §10/2-202. In her response brief, Plaintiff argued that the spoliation here was willful and wanton simply because it was done intentionally in that the tapes were erased without a vote from the School Board. (Doc. 179 at 92). That response was insufficient and off the mark.

Pursuant to the statute, willful and wanton conduct "means a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of

others or their property." 745 Ill. Comp. Stat. §10/1-210. Translated into language relevant to a spoliation claim where the harm is intangible, willful and wanton conduct must logically be established by presenting evidence the public employees acted with either intentional or conscious disregard of their duty to preserve evidence. The Court has time and again explained that the duty to preserve evidence in this case emanated from the Defendants' common law duty to preserve evidence in the impending litigation, which arose on March 24, 2010, the date Plaintiff communicated via a letter to the Defendants that she was the victim of disparate treatment on the basis of her gender.

In other words, in responding to the invocation of immunity under §10/2-202, Plaintiff knew or should have known she was obligated to demonstrate how the Defendants intentionally or consciously disregarded their duty to preserve evidence. Again, plaintiff herself wrote she "needs to convince the jury, by a preponderance of the evidence, that [the evidence was] destroyed <u>when</u> the Defendants had a duty not to destroy [it]." (Doc. 191 at 19).[4] Thus, to now claim Plaintiff was not aware she was obligated to present evidence of when the evidence was destroyed in response to Defendants' summary judgment motion is without merit.

---

[4] Moreover, Plaintiff has been well aware, since as early as January 2014 when the Court ruled on an objection to the Magistrate Judge's rejection of Plaintiff's request for sanctions for Defendants' destroying the audiotapes, that she would have to show that Defendants destroyed the evidence on or after March 24, 2010 in order to show bad faith because the Court rejected the premise that Defendants' obligations under the OMA or any school policy extended to her as the adverse party in this litigation. Acting in bad faith in the context of spoliation sanctions and acting willfully and wantonly in the context of a spoliation claim against public employees are sufficiently similar that there is no plausible basis for the Plaintiff to claim she has had no notice that she would ultimately have to prove when the tapes were erased.

Thus, while the Court should have included the foregoing discussion in its original Opinion & Order, there has been no manifest error that warrants changing the Court's decision to deny the spoliation claim because it is clear Plaintiff had a duty to present evidence of when the audiorecordings were erased in response to the Defendants' motion for summary judgment and she did not do so.

## III.   The Interpretation of Illinois Statutory Law and Breach of Contract

Plaintiff next contends that the Court ignored Illinois statutory law and to do so was error. The applicable statute states in relevant part:

> Performance-based contracts **shall** be linked to student performance and academic improvement attributable to the responsibilities and duties of the principal, assistant principal, or administrator. No performance-based contract **shall be** extended or rolled-over prior to its scheduled expiration **unless** all the performance and improvement goals contained in the contract have been met. Each performance-based contract **shall** include the goals and indicators of student performance and academic improvement determined and used by the local school board to measure the performance and effectiveness of the principal, assistant principal, or other administrator and **such other information as the local school board may determine**.

105 Ill. Comp. Stat. Ann. 5/10-23.8a (current through P.A. 98-1174 of the 2014 Reg. Sess.) (emphasis added). The Court mentioned in its Order and Opinion that it did not agree with the Plaintiff that the Fieldcrest Board was required to only consider performance goals under Plaintiff's contract in its decision on whether to keep Plaintiff. The Court made this statement in explaining why a comparison of the Board's treatment of Principal Lapp in renewing/extending his contract to the Board's treatment of Plaintiff was not relevant to Plaintiff's claim of discrimination. Plaintiff's point is that the Board ignored Illinois law to afford Lapp, a male, a benefit that it denied to Plaintiff, a woman.

13

First, the Court disagrees with Plaintiff that this statutory language conveys that academic performance is the <u>sole</u> criteria for which the decision to renew/extend or roll-over such a contract. Much like the contract itself, all this statutory language states is that the academic progress and student performance are necessary, but <u>not exclusive</u>, criteria on which a principal must be assessed to secure an extension or rollover. Plaintiff misinterprets the clause "shall be linked to" to mean no other criteria can be utilized to assess whether a principal's contract should be renewed or extended. The Court disagrees with that interpretation and notes that Plaintiff has not provided the Court with any authority for her reading. At base then, Plaintiff simply disagrees with the Court's interpretation of a statute and the contract. Disagreement with a court's interpretation of a statute/contract for which the litigant has provided no authority instructing the court how to interpret can hardly be considered a fair allegation of manifest error.

Second, the comparison of Lapp to Plaintiff just does not work. That the Board extended/renewed Lapp even though he failed to meet performance standards required under the law simply means the Board may have violated the law with regard to Lapp. It does not mean the Board impermissibly favored Lapp over Plaintiff. This is so because the Board's decision to not renew/extend Plaintiff's contract did not rest on any purported inability of her to meet the performance standards. Instead, the Board opted to move her out based on teacher complaints and a desire to appease Doug Roberts. Therefore, the comparison between Lapp and Plaintiff is not meaningful because the two were not facing the same or similar situation. *See Coleman v. Donahoe*, 667 F.3d 835, 841 (7th Cir. 2012) ("the proposed

comparator must be similar enough to permit a reasonable juror to infer, in light of all the circumstances, that an impermissible animus motivated the employer's decision").

Next, the Plaintiff contends that the contract does not list teacher complaints as a factor for the principal's contract to be assessed. The implication being Fieldcrest violated Illinois law by deciding to not renew/extend or roll-over the contract based upon teacher complaints or any other reason not linked to academic performance. This argument has a more reasonable basis than Plaintiff's other contentions, but it is still misguided. The statute states in relevant part that "[e]ach performance-based contract shall include the goals and indicators of student performance and academic improvement determined and used by the local school board to measure the performance and effectiveness of the principal, assistant principal, or other administrator and such other information as the local school board may determine." 105 Ill. Comp. Stat. §5/10-23.8a. Plaintiff's claim in this lawsuit is one of breach of contract not violation of 105 Ill. Comp. Stat. §5/10-23.8a. Thus, the fact that Plaintiff's contract does not list teacher complaints as a factor that could be  considered in determining whether to extend/renew/ or roll-over her contract has no significance to her breach of contract claims or her discrimination claims predicated on badly constructed comparisons. If anything, Plaintiff's claim should have been that her contract violated Illinois law, not that the Defendant School Board breached the contract in failing to renew/extend her term as principal of Fieldcrest South.

Additionally, Plaintiff claims the Court erred in ruling that she was moving for summary judgment on a claim not contained in the operative complaint. She also complains that the Court erred in choosing to deny two of her viable claims on the basis that the breaches were inconsequential to the object of the bargain encapsulated by the contract because these were not grounds raised by the Defendant Board in its motion for summary judgment. These alleged errors do not amount to manifest error.

First, Plaintiff organized her complaint in such a way that she laid out background facts in Section III, which she called "The Incidents," while she entitled Section IV "Plaintiff's Claims" and in it, listed out her myriad federal and state law claims in subsections. (Doc. 114 at 20-26). While she is correct that she mentioned that her performance was not judged according to the terms of her contract in Section III of her complaint, nowhere in Section IV—where she delineates her actual claims for which she seeks relief—did she claim the failure of the Fieldcrest Board to assess her on the basis of student achievement constituted a breach of the contract for which she was seeking relief. Thus, this Court did not err in finding that specific claim was not made. Even if the Court was wrong, and it can be fairly concluded this specific claim was actually made in the complaint, it would still fail for the reasons that this Court has already explained several times now. The Court does not read Plaintiff's contract to provide that the Board could only base its employment decisions on the criterion of student achievement or that the Board had an affirmative duty to assess her on the basis of student achievement.

Second, Plaintiff's contention that the inconsequentiality of the Board's alleged breaches was never called into question by Defendant's motion is just plain incorrect. The Defendant School Board argued that none of Plaintiff's alleged breaches could in any way be material. (Doc. 173 at 31). The Court agreed with the Defendant, although it did not use the term "material" because that is more generally used as a term of art in deciding issues of anticipatory breach.[5] But the clear import of the argument was that the breaches did not matter, that is, they were inconsequential and in laymen's terms, "immaterial," because they were incapable of causing any harm contemplated by the contract. Moreover, Plaintiff herself moved for summary judgment on at least two of the breach of contract claims, thus presenting evidence of the harm she suffered from the alleged breaches was clearly her responsibility to provide under existing precedent. *See Modrowski v. Pigatto*, 712 F.3d 1166, 1168-69 (7th Cir. 2013); *see also Cloe*, 712 F.3d at 1182; *Celotex Corp.*, 477 U.S. at 326. In Illinois, the elements of a breach of contract claim are "(1) a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Timan v. Ourada*, 972 N.E.2d 744, 751 (Ill. App. Ct. 2012).

In short, the Court did not err in its treatment of Plaintiff's contract claims.

---

[5] Obviously, there were no issues of anticipatory breach in this litigation. Thus, within the context of this litigation, the only reasonable interpretation of the term "not material" was that Defendants were arguing the complained breaches unimportant, irrelevant, inconsequential, and so forth.

## IV.    Suspicious Timing

Next, the Plaintiff takes issue with the Court's analysis of her suspicious timing evidence used to support her Title VII claims. Plaintiff argues that the Court erred in finding Plaintiff's proffered evidence not relevant to her discrimination claims made under the direct method. She cites to *Martino v. Western & Southern Financial Group*, 715 F.3d 195, 204 (7th Cir. 2013) and *Morgan v. SVT, LLC*, 724 F.3d 990 (7th Cir. 2013) for the general proposition that suspicious timing may be considered as evidence of discrimination in non-retaliation cases.

Plaintiff consistently reads things out of context. This Court never stated that evidence of suspicious timing could not be considered as evidence of discrimination in non-retaliation cases. The Court stated that suspicious timing evidence is relevant <u>where temporal proximity is material to the claim</u>. (Doc. 190 at 16). Then the Court gave two examples of cases where temporal proximity of the employers' acts cast obvious doubt on the motivation for the adverse employment actions suffered by the employees. (Doc. 190 at 16).

Plaintiff argued in her response that the timing of Fieldcrest's' complaints about her performance coincided with Doug Roberts' announcement that he would leave Fieldcrest unless he obtained a position that would allow him to spend more time at home, the inference being that Plaintiff was being cleared out for Doug Roberts. The Court explained that Plaintiff was being cleared out for Doug Roberts was obvious and not the point of the discrimination claims. Title VII is concerned with unlawful discrimination. Thus, the evidence offered should have allowed a

finder of fact to infer that Doug Roberts was preferred over Plaintiff because he is a man and she is a woman; not merely that Doug Roberts was preferred to Plaintiff. The Court did not err in its analysis.

## V.      Remaining Claims of Factual Error

Before delving into Plaintiff's remaining claims of error, it is useful to pause and refer to Federal Rules of Civil Procedure 56(g).  Apparently, the Plaintiff is operating under the assumption that the factual conclusions drawn by the Court in the summary judgment Opinion & Order are final.  Such is not the case. Rule 56(g) states that in the event a "court does not grant all the relief requested by the motion, it may enter an order stating any material fact--including an item of damages or other relief--that is not genuinely in dispute and treating the fact as established in the case." Fed.R.Civ.P. 56(g) (emphasis added). Thus, Rule 56 does not automatically bind parties to facts established for the purposes of summary judgment. The Court has not entered any such order establishing any facts for trial, even though it deemed certain facts undisputed for purposes of summary judgment. Thus, Plaintiff's nitpicking on inconsequential facts is wholly unnecessary.

### A.      Interviews with Fieldcrest

Doug Roberts did not have to interview for the vacancy created by Fieldcrest's decision to not renew/extend Plaintiff's contract. Conversely, Plaintiff was told she would have to interview and submit formal application materials for the vacancy at Roberts' school. Ultimately, she was not even allowed to interview

for the position. The Court found the difference in treatment between Roberts and Plaintiff on this point to be irrelevant to the Title VII discrimination claims.

Plaintiff argued in her Response as follows: "Doug Roberts was given Plaintiff's job without even interviewing, while Plaintiff was not even allowed to interview for Roberts' job after Vincent intervened to stop the new Superintendent from interviewing her. (¶270-276)" (Doc. 179 at 83). The Court explained as follows:

> Roberts had been a principal of Fieldcrest East for four years before being hired as the new full-time principal of Fieldcrest South. There is no indication in the record that Plaintiff had ever worked for Fieldcrest or was otherwise known to Fieldcrest when she applied there.[6] Thus, Roberts and Plaintiff are not comparable on this issue. Having had four years to observe Roberts, Fieldcrest would have little need to interview him as the Board was already familiar with him and his ability. Furthermore, one of the reasons Plaintiff was not renewed was for the express purpose to make room for Roberts as the full-time principal of Fieldcrest South so he would not leave Fieldcrest. It would be a wholly unnecessary exercise to interview one for a position that was already secured for that person. Lastly, Fieldcrest decision-makers had already concluded they did not want to deal with Plaintiff once her contract ran out, so they had no need to allow her to interview for a different position.

(Doc. 190 at 18). Plaintiff argues that the Court's explanation is inexplicable. It makes perfect sense. Fieldcrest liked Doug Roberts. Fieldcrest did not like Plaintiff. Fieldcrest wanted to appease Roberts so he would not leave the District. Fieldcrest did not care about appeasing Plaintiff. Fieldcrest was already familiar with Roberts and knew it wanted him at South so no interviewing or other formalities were necessary such as when Plaintiff first applied to Fieldcrest as an outsider.

---

[6] Perhaps Plaintiff was misled by the Court's failure to clarify it was discussing the first time Plaintiff applied to Fieldcrest as an outsider to highlight why such measures would apply to an outside candidate but not an inside candidate, not when she applied for Roberts's former position.

Fieldcrest was also familiar with Plaintiff when she wanted to move into Roberts's vacated position and knew it did not wish to keep her as a principal, so they did not allow her to even interview for the position. While this evidence shows Plaintiff and Roberts were treated differently, it sheds no light on whether the difference in treatment was due to their sex. It is abundantly clear Fieldcrest valued and favored Roberts over Plaintiff but Title VII does not prohibit employers from favoring one employee over another. Title VII prohibits favoritism on the basis of certain criteria, sex in this case. That is why the Court discounted the value of this comparison in its Title VII analysis. The Court did not err in doing so. Most importantly, Plaintiff ignores that her discrimination claims based upon failure to renew/extend/ or roll-over the contract remain.

**B.    The Timing of Pressure Put Upon Plaintiff to Look for Work Elsewhere**

The Court wrote that "[i]n January of 2009, then-Superintendent Vincent told Plaintiff that she should start looking for another job because of teacher complaints." (Doc. 190 at 6.) There is evidence Plaintiff began being pushed to find another job as early as the "Fall of 2008." (Doc. 168-13 at 22). Plaintiff fails to explain how the difference is of any consequence to any issue decided in the Opinion & Order. The Court has reviewed its January 12, 2015 Opinion & Order and is satisfied that the fact that Plaintiff may have been pressured to leave Fieldcrest's employ as early as the fall of 2008 has no bearing on the Court's legal conclusions. Plaintiff is free to present evidence of when she first was asked to look for another job at trial.

**C.    Evidence of Spoliation**

Plaintiff takes issue with the Court's recognition that there was no "indication in the record before the Court of when the audio recordings of these closed-session meetings were actually erased." (Doc. 190 at 7). Plaintiff argues she has substantial evidence of when the tapes were erased. (Doc. 191 at 9, 11). Yet Plaintiff concedes she did not present this evidence (*id.*) and tries to absolve herself from such failure by drawing attention to the fact the Defendants have not provided this evidence either, as if it was their burden to produce evidence of their own alleged malfeasance. The impact of Plaintiff's failure to present this evidence has already been discussed so there is no need to rehash it here. *See* Section II, *supra*. The Court committed no factual error in regard to its recognition that there has been no presentation of evidence concerning when the audiorecordings at issue were erased.

**D.    Principal DeMay's Exit Compensation and Exit from Fieldcrest**

Plaintiff complains that the Court erred by stating Jim DeMay's exit payout was around $17,000 and characterizing his departure from Fieldcrest as an adverse employment action. Plaintiff does not explain how either of these alleged errors impacted the Court's treatment of her claims. DeMay was either asked to resign or offered to resign once confronted with allegations of misconduct. Plaintiff was never charged with any misconduct so she was never put in a position "to save face" as DeMay found himself. Thus, the Court found that Fieldcrest's treatment of DeMay was not comparable to its treatment of Plaintiff. (Doc. 190 at 17).

Plaintiff's argument that DeMay was not subjected to an adverse employment action is a mere exercise in semantics. Again, there is no doubt he was either asked to resign or offered to resign once confronted with allegations of misconduct. The point is he was ultimately forced to leave Fieldcrest's employ; that is an adverse employment action.

Moreover, that DeMay was offered a letter of recommendation (Doc. 191 at 9) means nothing, because Plaintiff herself acknowledges Vincent offered to give her a letter of recommendation as well. (Doc. 168-13 at 22). Also, according to the Plaintiff, she began to be pressured to leave Fieldcrest in December of 2008, yet there is no dispute she was allowed to complete the term of her contract, while it appears DeMay was not afforded that opportunity.

## CONCLUSION

IT IS THEREFORE ORDERED, Plaintiff's Motion for Reconsideration (Doc. 191) is DENIED as there has been no showing of manifest error. The final pre-trial conference is scheduled for March 11th, 2015 at 11:00 am with the parties to meet with the law clerk at 10:00 am in Chambers for a preliminary jury instruction conference.

So ORDERED.

Entered this 25th day of February, 2015.

s/ Joe B. McDade
_____
JOE BILLY McDADE
United States Senior District Judge
